## DODSON v. TEMPLE HILL BAPTIST CHURCH, INC.

[No. 111, September Term, 1967.]

698 

 

 

 

*Decided February 9, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, BARNES, McWILLIAMS and FINAN, JJ.

*Joseph A. Mattingly,* with whom was *E. Harold Patterson* on the brief, for appellant.

*H. Hughes Spragins,* with whom were *Tomes, Spragins, McDonald & Sincoff* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

This extraordinary dispute concerns a lawyer's fee and the former client's success, so far, in foiling all efforts to collect it.

In the very early Fifties the Reverend William B. Adams (Adams) hired the appellant (Dodson) to collect a claim against the United States. The fee was to be contingent on Dodson's success. As a result of Dodson's efforts, Adams received $9,552 from the government but he refused to pay him the agreed percentage thereof. In 1954 Dodson obtained a judgment against Adams in the District of Columbia. *Adams v. Dodson,* 106 A. 2d 501. Dodson sued on that judgment in Montgomery County and on 24 February 1956 the circuit court rendered judgment against Adams for $1,611.82, interest from date, costs and the "costs accrued in the Municipal Court for the District of Columbia and the Municipal Court of Appeals for the District of Columbia."

The general situation, as revealed by depositions taken 16 September 1964 and 1 October 1964, in the judgment case, is as follows.

Adams, a minister of the Gospel, is the pastor of the appellee, Temple Hill Baptist Church, Inc. (the church), and one of its trustees. He gets disability retirement pay from the U. S. Army in the amount of $259 monthly. His salary as pastor is "about $4,400 a year" which, he said, is paid "spasmodically." He deposits the income of the church in a bank account upon which he alone draws checks, including checks to himself. His wife, who is employed, is also a trustee of the church. He has "no assets." He has no bank account, no savings and loan account, no car. He has borrowed to "the limit" on his life insurance policies. He has no stocks, bonds, notes, mortgages or judgments. He owns no jewelry, cameras or real estate. He has had no other assets since he received the $9,552 from the government.

Although he insists the church "does not owe * * * [him] any back salary," the testimony of some of the other trustees is to the contrary. Fritz Jackson said the trustees "have not been able to pay him anything. * * * About all * * * [they] can do is pay off the mortgage." Asked if the church owed Adams any money, Jackson replied, "Yes, it certainly does." Jackson's wife, herself a trustee, agreed that her husband's testimony was correct. Charles Bell testified "the church definitely owes Dr. Adams back salary" but that it did not have "the money or wherewithal" to pay it. He added "there would be no church at all if it was not for the personal assets of" Adams and Mrs. Adams. Robert Beach testified Adams "has not been paid a salary at all since * * * [he became] a trustee" in 1961, which suggests the church may owe him as much as $10,000.

Asked what became of the $9,552 he recovered from the United States, Adams said, "We put it into the work of the church." He added, "The entire amount was spent for the church and went into the treasury or perhaps I bought something separate for the church." He categorized the transfers as "gift[s]." He admitted, however, that in October 1954 he and his wife acquired improved real estate in Montgomery County, the purchase price of which was $16,000. They put up $5,000 in cash and borrowed the balance. Asked where the cash came from he replied, "From some that we had and some that we borrowed. Some my wife had." What was borrowed came "from a friend." Asked the name of the friend he replied, "His name is Jones, one of the Jones boys." He said he had "no idea" what Jones' address was, that he had "moved" and that before he moved his address was "P. O. Box 215, Rockville." The rent "took care" of the mortgage payments. Any deficiency the wife made up out of her earnings, he said.

Dodson, after an unexplained delay of 7 years, renewed the campaign to collect his money by causing an attachment to be issued in February 1963. The trustees of the church were summoned as garnishees. For reasons no longer important this effort was abortive. Another attachment issued in December 1964 suffered a similar fate.

In January 1964 Dodson filed a petition for supplementary proceedings in the case in which the judgment was entered in

1956. Despite the strenuous objections of Adams he succeeded in examining him and four of the trustees. These examinations resulted in the depositions mentioned earlier. Mrs. Adams, however, resisted, successfully, all efforts to examine her.

The garnishment proceeding which is the subject of this appeal was begun in December 1964. The appellee, summoned as garnishee, filed a plea of *nulla bona*. On 18 October the case came on for trial before Mathias, J., and a jury. At the close of Dodson's case the court directed a verdict in favor of the appellee. Two months later the court allowed counsel for the appellee a fee of $175 and entered judgment for that amount and costs against Dodson.

Dodson presents for our consideration 10 contentions in dealing with which we shall state whatever additional facts may be necessary.

### I, II and III.

These contentions arise out of adverse rulings made by Judges Shook and Pugh in the other cases. Since no appeals were noted these matters are not properly before us.

### IV, VIII and IX.

Judge Anderson, after a hearing in April 1965, denied Dodson's motion for summary judgment. He pointed out, in his opinion, that the appellee "denied having any assets" of Adams. The church had filed an affidavit of defense to the effect there were "no obligations due and owing by" it to Adams. It should be noted, however, that this affidavit was made by Adams. He thought it necessary, therefore, that "testimony be taken so that * * * [Dodson] may prove the debt and the fraudulent transfer, if any." He found there were "material issues of fact to be decided, and in view of the confused state of the pleadings and issues" he denied the motion. We think Judge Anderson was correct.

After the trial, in October 1966, Dodson filed a motion for a new trial and another motion for summary judgment. We cannot, of course, review the denial of the motion for a new trial since that was within the sound discretion of the trial judge and there is no indication of an abuse of that discretion. Judge Mathias' denial of the second motion for summary judgment

was correct for the same reasons given by Judge Anderson in denying the earlier motion.

## V.

Dodson says Judge Mathias erred when he sustained the church's objection to the admission of the files in the judgment case and the other two attachment cases. It should be noted that the amount of the judgment, interest and costs were stipulated to be $2,734.42. Moreover, Dodson was permitted to read into evidence excerpts, of his choice (except the testimony discussed below in section VII), from the depositions taken in the judgment case. In the circumstances we cannot say that the court's ruling amounted to reversible error especially since it is clear there was no prejudice.

## VI.

When Dodson sought to put the details of his claim on the blackboard the court sustained the objection of the church. We see no error in this ruling particularly in view of the stipulation as to the amount due.

## VII.

As the trial began Judge Mathias ruled that Dodson would not be allowed to offer any evidence as to whether Adams' gift of $9,552 to the church was a fraudulent conveyance. He suggested Dodson's only remedy in that respect was by way of a bill in equity to set the conveyance aside. Dodson's counsel then began to read into evidence portions of the deposition of Dr. Fritz Jackson. When he reached the questions and answers dealing with the alleged gift of $9,552 Judge Mathias told him he would "not permit * * * [him] to read that." The same ruling prevailed in the reading of the deposition of Robert Beach. We think that, here, the learned judge was in error.

We have no difficulty holding that the gift to the church was, prima facie, a fraudulent conveyance, Code, Art. 39 B, § 4 (1965 Repl. Vol.) ; *Turner v. Hudson Cement & S. Co.*, 133 Md. 134, 104 Atl. 455 (1918) ; and *Savings Bank v. Sauble*, 183 Md. 628, 39 A. 2d 862 (1944), and that Dodson had a right to pursue the $9,552 in an attachment proceeding. Code, Art. 39 B, § 9 (1965 Repl. Vol.) ; *Atlantic Lumber Corp. v. Waxman*, 162 Md. 191, 159 Atl. 593 (1932).

The church insists it must prevail unless Dodson proves that it has property, funds or credits in its hands for which Adams could sue and recover. There is no doubt that is the general rule. *Cole v. Randall Park Holding Co.,* 201 Md. 616, 95 A. 2d 273 (1953). However, a well-recognized exception to the general rule is that where the debtor has fraudulently conveyed property to another the grantee may be charged as garnishee, even though the grantor cannot maintain a suit for its recovery against the grantee. *Odend'hal v. Devlin,* 48 Md. 439, 445 (1878); *Farley v. Colver,* 113 Md. 379, 386, 77 Atl. 589 (1910); *Arthur v. Morrow Bros.,* 131 Md. 59, 67, 101 Atl. 777 (1917); 37 C.J.S., *Fraudulent Conveyances,* § 310, p. 1142.

X.

Dodson contends, finally, that the award of a counsel fee to counsel for the church was erroneous. In light of the conclusions reached here, we agree.

We agree also that the court should not have directed a verdict for the church at the conclusion of Dodson's case. There was evidence and reasonable inferences arising therefrom upon which a jury might have found that the church owed Adams in unpaid salary more than the amount of Dodson's claim. Mr. Beach testified Adams was "entitled to a salary" but that he had "not been paid a salary at all" since he became a trustee in 1961. Dr. Jackson agreed the church owed Adams money and he agreed that Adams had testified the salary was $85 per week.

Appellee's motion to dismiss purports to be grounded on Maryland Rules 835 a 1 and 835 b, but since it seems clear to us that the appeal was taken well within the time allowed, the motion will be denied.

> *Motion to dismiss denied.*
> *Judgment in favor of the appellee against the appellant for costs reversed.*
> *Judgment in favor of appellee against appellant for the $175 counsel fee reversed.*
> *Costs to abide the result below.*
> *Case remanded for a new trial.*
> *Mandate to issue forthwith.*