600 A.2d 1156

**FLAT IRON MAC ASSOCIATES**

v.

**Maurice P. FOLEY, et al.**

**No. 436, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Feb. 3, 1992.

Robert A. Burka (Dennis M. Cate and Knopf & Burka, on the brief), Washington, D.C., for appellant.

Glenn M. Cooper (Theodore P. Stein and Paley, Rothman, Goldstein, Rosenberg & Cooper, Chartered, on the brief), Bethesda, for appellee, Jawish.

Robert G. Schoshinski (Richard L. Lyon and Dragga, Lyon & Sundt, on the brief), Rockville, for appellee, Chevy Chase.

Stanley Mazaroff (Venable, Baetjer and Howard, on the brief), Baltimore, for appellee, Marriott.

Argued before BISHOP, WENNER and MOTZ, JJ.

BISHOP, Judge.

The judgments from which this appeal is taken were entered on February 5, 1991. A Motion for Reconsideration was filed by appellant on February 11, 1991. An appeal was filed to this Court on March 5, 1991 from the judgment of February 5, 1991. The trial court denied the motion for reconsideration on May 2, 1991 and, on May 17, 1991, a second appeal was filed from the denial of the motion for reconsideration and "any judgments which may not have been considered final until the May 2, 1991 judgments because of the motion for reconsideration." Based on the foregoing we are satisfied that all of the judgments from which appellant intended to appeal are properly before this Court.

The judgment underlying the garnishment issues raised in this appeal was obtained by appellant Flat Iron Mac Associates ("Flat Iron") against Maurice P. Foley ("Foley") in the Circuit Court of the City of Norfolk, Virginia. The judgment was in the amount of $239,621.09, plus 8% annual interest, costs of $76.00 and attorney's fees in the amount of $10,075.00. On June 9, 1989, Flat Iron recorded the judgment in the Circuit Court for Montgomery County,

Maryland.[1] Since the recording of the judgment, Flat Iron has made valiant but unsuccessful efforts to collect.

### Issues Presented

I. Issues as to M. Carol Jawish:

A. Can a garnishee's receipt of a debtor's property, to which she obtains legal, but not beneficial title, constitute a fraudulent conveyance under Maryland law?

B. In Maryland, does a writ of garnishment of property attach a debtor's property in a garnishee's hands on the date of service and his property coming into garnishee's hands thereafter, but prior to entry of judgment?

C. Should a judgment creditor be entitled to judgment for all debtor's property in garnishee's hands, both at the time of service and thereafter, if the judgment creditor does not specifically allege or plead that the writ also seeks the "after service" property?

D. If an allegation of "after service" property is required and not made, is it an abuse of discretion for the trial court to deny leave to allow the judgment creditor to amend its pleadings accordingly?

II. Issue as to Chevy Chase Savings Bank, F.S.B.:

Should a bank be required to honor a writ of garnishment to attach all property of the debtor, when funds—which the bank is on actual notice belong to debtor—are placed in the account of another, who freely admits the funds belong to the debtor?

III. Issues as to Marriott Corporation:

A. May a judgment creditor's untimeliness in replying to a garnishee's answer be excused when: (a) such un-

---

1. On November 25, 1991, Maurice P. Foley filed a petition for relief under Chapter 7 of the United States Code in the United States Bankruptcy Court for the District of Maryland at Rockville. By our December 2, 1991 Order we stayed all proceedings, as to Maurice P. Foley only, pending further Order of the United States Bankruptcy Court.

timeliness is due solely to judgment creditor's inability to contest garnishee's answer in good faith because of garnishee's failure to divulge information about the debtor uniquely in the garnishee's possession; (b) a reply was filed prior to the filing of a motion for judgment by garnishee; and (c) there has been no argument of prejudice because of the untimely filing?

B. Was it an abuse of discretion for the court to dismiss a writ of garnishment of property under Maryland Rule 2–645 due to an untimely reply where, prior to the filing of the reply, the garnishee filed no motion to dismiss the writ, the court did not dismiss it, and there has been no argument of prejudice because of the late filing?

### Statement of Facts

#### Jawish

A writ of attachment was issued, in October 1989, against Jawish, individually and d/b/a International Realty Consultants, Inc. ("IRC"). In a subsequent deposition, Jawish admitted that from approximately March 1988 until late October 1989, either she had deposited or had allowed Foley to deposit Foley's funds into her personal checking account in the Chevy Chase Savings Bank, F.S.B. ("Chevy Chase"). In order that the money so deposited would be available to Foley, Jawish supplied Foley with blank checks, signed by her, or blank checks on which Foley would sign Jawish's name. From March 1988 through October 1989, more than $250,000.00 of Foley's money passed through Jawish's account. Jawish freely admitted, in her deposition, that she permitted Foley to use the account because "[s]omeone had attached all the moneys in the one account that he had."

On December 6, 1989, Flat Iron had a second writ of garnishment served on Jawish,[2] by which it attempted to

---

**2.** This second writ of garnishment, issued on November 30, 1989, was necessary because the writ issued in October was improperly served.

reach all of Foley's funds that had passed through Jawish's account based on a fraudulent conveyance theory. Jawish confessed to holding $141.48 of Foley's money on the date of service, December 6, 1989, and, in addition, denied any fraudulent conveyance. Flat Iron responded by reasserting its fraudulent conveyance claim. Subsequent to the December 6th writ, an additional $40,000 of Foley's money passed through Jawish's account. In August 1990, Jawish was served with Flat Iron's new complaint alleging fraudulent conveyance and in September 1990 Flat Iron filed motions for summary judgment against Jawish in both the garnishment action and fraudulent conveyance action. Flat Iron alleged a total of $290,000.00 of Foley's money passed through Jawish's account from March of 1988 to August of 1990.

After a hearing on February 5, 1991, the court entered judgment against Jawish in the amount of $141.48. At this hearing and without any amendment to the pleadings, Flat Iron sought to attach funds which came into Jawish's account after December 6, 1989 but prior to the date of hearing. The court found that the only issue before it was the December 6, 1989 attachment and it denied Flat Iron's attempt to go beyond that date. Flat Iron's subsequent motion for reconsideration was denied.

### Chevy Chase

A writ of garnishment on the property of Maurice P. Foley was served on Chevy Chase on August 3, 1989. On the same day, Chevy Chase filed an answer in which it denied holding any funds in the name of Maurice P. Foley. When advised informally that the account was in Jawish's name, Flat Iron supplied evidence to the bank's counsel that the money in Jawish's account belonged to Foley. Chevy Chase, however, maintained its denial. This motivated Flat Iron to file a partial motion for summary judgment to which Chevy Chase responded with an opposition to that motion and its own motion for summary judgment. After a hear-

ing on February 5, 1991, Chevy Chase's motion was granted and summary judgment entered in its favor.

## Marriott

Flat Iron filed writs of garnishment against Marriott on August 2, 1989, for property and wages belonging to Maurice P. Foley. In its answer, Marriott stated that Foley was not an employee and that Marriott was not holding any of his property. Flat Iron did not file timely responses to Marriott's answer in accordance with Md.Rules 2–645(g) and 2–646(g). Flat Iron did not respond until over one year later when, on October 17, 1990, it filed a motion for partial summary judgment. Marriott filed a cross motion for judgment which was granted based on Flat Iron's failure to comply with the rules.

## I.A.

Flat Iron contends that Jawish's receipt of funds from Foley constitutes fraudulent conveyance. The appeal before us today arises from Civil Action No. 43729, a writ of garnishment action by Flat Iron against Jawish based in part on a fraudulent conveyance theory. In addition to this action, Flat Iron filed a separate suit, Civil Action No. 61121, also alleging fraudulent conveyance by Jawish. At a hearing on February 5, 1991, the trial court denied Jawish's motion to dismiss two of the counts alleging fraudulent conspiracy and conspiracy to defraud in Civil Action No. 61121; denied Flat Iron's request for summary judgment on those two counts; and denied Flat Iron's request to consolidate the two civil actions because Judge Miller found that the actions did not require the same evidence. (The trial court's denial of summary judgment was not entered as a final judgment.) Trial for Civil Action No. 61121 is set for early 1992.

In *Dodson v. Temple Hill Baptist Church*, 248 Md. 697, 702–03, 238 A.2d 239 (1967), the Court of Appeals recognized that a judgment creditor, in an attachment proceeding for money, was entitled to present evidence that a debtor

had fraudulently conveyed property to a garnishee, and if so proved, the judgment creditor was entitled to collect the amount so conveyed from the garnishee even if the judgment creditor could not collect from the debtor.

In the case *sub judice,* Judge Miller found that there were sufficient facts to let the case go to trial on fraudulent conspiracy and conspiracy to defraud counts in Civil Action No. 61121 but never made factual determinations or decided the issue of fraudulent conveyance presented in Civil Action No. 43729.

We remand to the trial court, with instruction to consolidate Civil Action No. 43729 and Civil Action No. 61121, for resolution of the fraud claims.

### I.B., and C.

Flat Iron contends that a writ of garnishment of property attaches the debtor's property in the garnishee's hands on the date the writ is served and any property belonging to the debtor which comes into the garnishee's hands thereafter, but prior to entry of judgment, even if the judgment creditor does not plead "after service" property specifically.

Appellee Jawish claims that it is well-settled in Maryland that a writ of garnishment applies only to property held as of the date of service of the writ. Jawish argues this is so because Maryland Rule 2–645(j) requires that the "judgment shall be limited to the value of the property of the judgment debtor ... in the hands of the garnishee...." This argument is weak in light of the history of attachment of property in Maryland, and the plain language of the statute. We agree with Flat Iron's contention and hold that under the principles of attachment in Maryland the trial court erred by limiting the judgment to the amount of Foley's money in the hands of Jawish at the time the writ was served and not including property which came into Jawish's possession after service but prior to judgment.

The statute does not specify the time frame in which the debtor's property must come into the hands of the gar-

nishee in order for the garnishee to be accountable for it under the writ. Under Md.Rule 1–201(c) we look to the common law to fill in this omission.

The history of attachment of property in Maryland and a thorough explanation of this law was provided by the Court of Appeals in *Bedding Co. v. Warehouse Co.*, 146 Md. 479, 487–493, 126 A. 902 (1924). In summary, the Court established:

> This early construction of the statute, that an attachment affects all property and credits of the debtor in the hands of the garnishee or which may come to his hands at any time after laying the attachment and before trial, is the settled law of this State. (citations omitted).
>
> \* \* \* \* \* \*
>
> [F]rom the time of the garnishment, the goods in the possession of the garnishee, or that may come into his possession prior to the trial, are considered as in *custodia legis*, and the garnishee is bound to keep them safely.... It is his duty to hold them until the question of his liability is determined, as well against the defendant as against any subsequent purchaser or pledgee.

*Id.*, at 491–492, 126 A. 902. The Court noted that the applicability of garnishment from the time of service until trial was a leading characteristic of the remedy of attachment in Maryland, and in large part responsible for its effectiveness. *Northwestern Nat'l. Ins. v. Wetherall*, 272 Md. 642, 654, 325 A.2d 869 (1974).

 Recently, this Court, in resolving the priority of claims for the debtor's money obtained by a writ of garnishment of property under the current Md.Rule 2–645, reaffirmed that " 'an attachment on judgment served on a garnishee creates an inchoate lien which is binding not only on all the judgment debtor's assets which the garnishee then has in his possession, but also on all those which come into his hands before judgment in the garnishment action.' " *Howard County v. Allnutt, Inc.*, 74 Md.App. 422, 426, 538 A.2d 321 (1988) (quoting *Fico, Inc. v. Ghingher*, 287 Md.

150, 161, 411 A.2d 430 (1980)). Thus, a writ of garnishment of property, as a matter of law, includes all of the debtor's property in the hands of the garnishee and which comes into the hands of the debtor prior to trial or entry of judgment.

■ Jawish contends that even if a writ of garnishment covers "after service" property, Flat Iron failed to raise the issue of future funds in its Reply to Jawish's Answer to the Writ of Garnishment and also in its Motion for Summary Judgment. Jawish argues, therefore, that the issue was not before the trial court.

Jawish gives no documentary or legal support for this argument and we will not provide either for her benefit. We hold that it was not necessary for Flat Iron to plead "after service" funds, specifically, because the writ of garnishment served on Jawish directed her, individually and d/b/a International Realty Consultants, Inc., "to hold the property of the judgment Debtor named above [Maurice P. Foley] *subject to further proceedings in this Court.*" (Emphasis added.) In light of the law of attachment in Maryland, this language sufficiently instructed the garnishee to hold any and all of the debtor's property of which she was possessed from the time she received the garnishment until court proceedings were held. This language in no way implies the only property that was to be held was that which was in her possession at the very moment the writ was served. Interpreting this language in the writ or the law of garnishment to permit seizure of only that property in hand at the time of service would result in waste of judicial resources. The judgment creditor would be required to appear in court at least daily to prevent a debtor from continuing to use a particular garnishee to shield the debtor's easily transferable assets, e.g. money, from the creditor and would be required to constantly amend his pleading every time a new asset, or even the same asset once again, came into the garnishee's possession prior to trial or entry of judgment. The garnishee would be able to continue to aid the debtor by shielding the debtor's

assets with impunity, despite the court issued writ, thereby defeating the whole purpose of the writ.

The purpose of attachment is to place the debtor's property "on hold" until the court determines its proper disposition given the various legal claims to it. "[U]ntil judgment ..., the attachment serves the useful function of preventing the garnishee from prematurely disposing of any of the judgment debtor's assets." *Fico*, 287 Md. at 162, 411 A.2d 430. The effect of laying the attachment in the hands of the garnishee is to warn and notify her that all property of the debtor, then in or coming into her hands subsequently, is subject to the inchoate lien of the attachment by garnishment. *Bedding Co.*, 146 Md. at 493, 126 A. 902.

Once served with a writ of garnishment "it is the garnishee's duty to hold the attached assets until the entry of a judgment in the garnishment action." *Fico*, 287 Md. at 162, 411 A.2d 430 (citing *Northwestern Nat'l Ins. Co. v. Wetherall*, 267 Md. 378, 385, 298 A.2d 1 (1972); *Bedding Co.*, 146 Md. at 492, 126 A. 902). Consequently, if the property possessed by the garnishee, after service but prior to judgment, is not in the hands of the garnishee at the time of the judgment hearing, because the garnishee surrendered the property to the debtor, the garnishee is liable for the value of the debtor's property which came into her hands from the time she was served with the writ until the time of the hearing, and a judgment *in personam* will be rendered against the garnishee for any deficiency. *Bedding Co.*, 146 Md. at 492, 126 A. 902.

In the case *sub judice*, Jawish was served on December 6, 1989, with a writ of garnishment for property belonging to Foley. The writ instructed Jawish to hold Foley's property until further court proceedings. Flat Iron replied to Jawish's answer dated January 8, 1990, on January 26, 1990. The Reply refers to the $141.18, because that is the amount Jawish claimed to have in her account at the time of service. Flat Iron's Reply went on to contend that Jawish had

$275,000 at the time of service. Clearly this does not and cannot limit the amount garnished by the writ.

Because Flat Iron's Motion for Summary Judgment is not in the Record Extract we are under no obligation to review Jawish's contention that it limited Flat Iron's claim to "after service" funds. We have reviewed the Summary Judgment document in the court record, however, and we find nothing in it that would limit the requirement that Jawish retain for Flat Iron's benefit all funds coming into her possession from the time of service until the court proceedings. The first court proceedings following Jawish's receipt of the writ took place on February 5, 1991. Under Maryland law, Jawish was required to hold all property belonging to Foley which came into her possession from December 6, 1989 until February 5, 1991.

On February 5, the trial court heard arguments about the amount of Foley's money in Jawish's Chevy Chase checking account on the date of service, namely, $141.48. The trial court refused to consider other funds belonging to Foley which passed through Jawish's account prior to the hearing, but after the filing of Jawish's answer. The trial court based its decision on the mistaken belief that under Md. Rule 2-645(j) the judgment was limited to the value of the property of the judgment debtor confessed by Jawish in her answer to the writ of garnishment. Jawish's answer was filed 30 days after the writ was served, more than one year before the hearing, and admitted funds possessed on the date of service only. The trial judge ruled that funds beyond those admitted in the answer were "future" funds and, therefore, could not be considered. The trial court erred in limiting the judgment to the amount of Foley's money in the hands of Jawish on the date the writ of garnishment was served. We remand to the trial court for an accounting of funds which were in the possession of Jawish for the benefit of Foley from December 6, 1989 through February 5, 1991, and the entry of a judgment in accordance with this opinion.

I.D.

Whether the trial court abused its discretion by prohibiting Flat Iron from amending its pleading is moot, since we hold, as a matter of law, the writ of garnishment includes property coming into the possession of the garnishee after service but prior to judgment, and we find nothing in Flat Iron's pleading which limited this requirement in the case *sub judice*.

II.

■ Flat Iron contends that the court erred in granting summary judgment in favor of Chevy Chase because Chevy Chase had actual notice the funds in Jawish's account belonged to Foley and Jawish freely admitted the funds belonged to Foley. Flat Iron, therefore, concludes Chevy Chase was required to honor a writ of garnishment by attaching Foley's funds in Jawish's account. We disagree and affirm the trial court's granting of Chevy Chase's request for summary judgment. We hold it was the duty of Flat Iron to identify accurately the debtor and the location of the debtor's property, and to obtain a writ which correctly attached the property. Chevy Chase had no duty to conduct an independent investigation on behalf of Flat Iron to identify the location of the Foley property. Specifically, Chevy Chase was not obligated to search for the debtor under any name but that specified in the writ of garnishment, nor was Chevy Chase obligated to make detailed inquiries as to the status of any account not listed in the writ to determine whether part or all of the funds "belonged" to someone other than the person or persons authorized to use the account.

Section 5–306 of the Financial Institutions Article which directs the activities of a bank with respect to adverse claims to property it holds reads:

(a) *In general.*—Except as provided in subsection (b) of this section, a banking institution is not required to recognize or take any action on any claim to a deposit or to

money or property held by it or contained in a safe-deposit box, if that claim is adverse to the interests of any person who, on its records, appears to be entitled to the deposit, money or property.

(b) *Effect of court order.*—If, in an action to which the adverse claimant is a party, a court order or decree involving a claim to the deposit, money, or property is served on the banking institution, the banking institution may or, if required by the court, shall impound the deposit, money, or property, subject to further order of the court, without, any liability on its part to anyone for doing so.

Md.Fin.Inst.Code Ann. § 5–306.

This Court has noted that "[f]or the purposes of garnishment a bank deposit *prima facia* belongs to the person in whose name it stands, the general test being whether, but for the garnishment, the deposit would be subject to defendant's check, or whether defendant could sue the bank therefor in debt or assumpsit." *Wanex v. Provident State Bank,* 53 Md.App. 409, 413, 454 A.2d 381 (1983) (quoting 38 C.J.S. Garnishment § 80 (1943)).

■ The Writ of Garnishment for Property served upon Chevy Chase named Maurice P. Foley only. It did not name M. Carol Jawish, nor did it mention the specific account in the name of M. Carol Jawish. Jawish was the sole record owner of the account in question and Foley was not an authorized signatory. Even if Chevy Chase had actual notice of Foley's use of Jawish's account, Chevy Chase had no authority to take action without a court order or decree identifying Jawish's account. It was Flat Iron's responsibility to obtain such a court order, not Chevy Chase's. Flat Iron could have taken the evidence of Jawish's involvement, it presented to Chevy Chase, to the court and sought an injunction and/or new writ of garnishment correctly identifying Jawish's account. Chevy Chase fulfilled its responsibility by checking its records for authorized account owners and users. Chevy Chase was not required to undergo a

detailed investigation but rather was entitled to rely on the name on the account as *prima facia* evidence that the funds belonged to Jawish. *Wanex*, 53 Md.App. at 413, 454 A.2d 381. Counsel for Flat Iron conceded twice, at the February 5th hearing, that Chevy Chase had not acted in bad faith or participated willfully in a scheme to defraud Flat Iron. The burden of proof of the garnishee's liability is on the judgment creditor. *Walsh v. Lewis Swim. Pool Constr.*, 256 Md. 608, 610, 261 A.2d 475 (1970). Flat Iron has not proved that Chevy Chase acted inconsistently with the court ordered writ of garnishment or its authority under § 5–306. We affirm the trial court's dismissal of the writ of garnishment served on Chevy Chase.

### III.A.

■ Flat Iron contends that the trial court abused its discretion when it dismissed the writ of garnishment served on Marriott because Flat Iron failed to reply to Marriott's answer within the 30 day time period required by Md.Rule 2–645(g). Flat Iron argues it was unable to reply in good faith to Marriott's answer, denying it held property belonging to Foley, because Marriott failed to divulge the basis for its answer. We affirm the trial court's ruling that the writ of garnishment for property served on Marriott terminated, absent a reply by Flat Iron, within 30 days of the filing of Marriott's answer.

Garnishment rights and proceedings are created by statute and "their existence is dependent upon special provisions authorizing them." *Northwestern Nat'l Ins. Co.*, 267 Md. at 384, 298 A.2d 1. Maryland Rule 2–645 governs the garnishment of property. It prescribes the time frames within which the judgment creditor and garnishee must act to protect their respective rights under the statute and the remedies for failure to abide by the time frames. Subsection (g) states:

> If the garnishee files a timely answer, the matters set forth in *the answer shall be treated as established* for the purpose of the garnishment proceeding *unless the*

*judgment creditor files a reply* contesting the answer *within 30 days* after its service. If a timely reply is not filed, the court may enter judgment upon request of the judgment creditor, the judgement debtor, or the garnishee.

Marriott answered the writ of garnishment of Foley's property on August 14, 1989, denying it held property belonging to Foley. Flat Iron did not file a reply to Marriott's answer until January 29, 1990.

Flat Iron concedes it did not file a reply within the 30 day time period but argues that (1) it was unable to reply within the 30 days, in good faith because Marriott withheld unique information about Foley that was solely within Marriott's control, and (2) the trial court was not required, although it was permitted, to deem Marriott's answer as established. We do not find Flat Iron's first argument persuasive and we disagree with its second.

Maryland Rule 2–645(e) requires only that Marriott admit or deny possession of property belonging to Foley, which it properly did in its August 14, 1989 answer. Flat Iron does not deny this and even conceded that Marriott acted in good faith at all times. Maryland Rule 2–645 imposes no duty on Marriott to investigate Foley or IRC on behalf of Flat Iron, or volunteer information beyond admitting or denying its possession of Foley's property. We assume that Flat Iron had a good faith basis for seeking a writ of garnishment against Marriott in the first place and assume this good faith basis would have supported Flat Iron's further pursuit of discovery after Marriott's answer. Under Md.Rule 2–645(h) Flat Iron could have filed, but did not file, interrogatories directed at Marriott's reasons for answering as it did and further exploring Marriott's knowledge of Foley. And Flat Iron could have, but did not, request an extension of the 30 day period from the court. For these reasons, we find Flat Iron's first argument unpersuasive.

Precedent in Maryland, as well as the plain language of Md.Rule 2–645, mandates that Marriott's answer,

denying that it held Foley's property, was established when Flat Iron failed to reply. "The word 'shall' in a statute is 'presumed mandatory on the parties, denoting "an imperative obligation inconsistent with the exercise of discretion." ' " *Robinson v. Pleet,* 76 Md.App. 173, 544 A.2d 1 (1988) (quoting *Tranen v. Aziz,* 59 Md.App. 528, 534, 476 A.2d 1170 (1984)) (citing *Johnson v. State,* 282 Md. 314, 321, 384 A.2d 709 (1978)). Since the statute created a garnishment right not existing at common law, compliance with the time periods established in the statute is a condition precedent to maintaining an action. *Trimper v. Porter–Hayden,* 305 Md. 31, 35, 501 A.2d 446 (1985) (citations omitted).

Because Marriott's answer, namely that Marriott did not hold any of Foley's property, was established for the purpose of the garnishment proceeding, the fact that Marriott did not request the court to enter judgment until after Flat Iron filed its untimely reply cannot change the outcome, as urged by Flat Iron. The writ of garnishment against Marriott was properly dismissed because Marriott held no property of Foley's, as a matter of law.

### III.B.

Flat Iron contends that its August 2, 1989 writ of garnishment of wages, answered by Marriott on August 14, 1989, was not automatically dismissed by Flat Iron's failure to request a hearing within 15 days after service of the answer because the court did not formally dismiss the writ until February 5, 1991. Flat Iron argues, therefore, that its writ is first in time and has priority over Foley's ex-wife's writ served on Marriott on November 17, 1989. We hold that Flat Iron's writ was not first in time. The writ of garnishment terminated at the expiration of the 15 day period, as a matter of law, because Flat Iron did not request a hearing.

Maryland Rule 2–646 establishes the procedure for garnishment of wages. Subsection (e) provides that the garnishee shall answer the writ within 30 days of service. When an answer is filed subsection (g) provides: "If the answer denies employment, *the court shall* dismiss the proceeding against the garnishee unless the creditor files a request for hearing within 15 days after service of the answer." (Emphasis added.) The plain language of this rule makes termination of the writ mandatory when the judgment creditor fails to request a hearing within the 15 day period. *Robinson,* 76 Md.App. 173, 544 A.2d 1. The statute does not require the garnishee to move for dismissal, but places the responsibility for dismissing the writ on the court. Thus, under Md.Rule 2–646, in the absence of a timely request for a hearing to contest an answer which denies employment, the garnishment proceeding terminates with respect to the garnishee, as a matter of law.

In the case *sub judice* Flat Iron's writ of garnishment of Foley's wages, dated August 2, 1989, was answered by Marriott on August 14, 1989. Marriott denied employing Foley. Flat Iron concedes that Foley was not an employee of Marriott on that date and did not become an employee of Marriott's until November 6, 1989. Flat Iron did not request a hearing within the prescribed 15 day period and at the end of that period the writ of garnishment terminated as to Marriott, even though the court had not taken the ministerial step to dismiss the writ. Flat Iron served Marriott with a second writ of garnishment of Foley's wages on November 30, 1989, thirteen days after Foley's ex-wife served Marriott with a similar writ. Under Md.Rule 2–646(i) "if a garnishee is served with more than one writ for the same debtor, the writs shall be satisfied in the order in which served." Having been served with Foley's ex-wife's writ first, Marriott is obligated to satisfy it before satisfying Flat Iron's writ.

**300**

JUDGMENT VACATED IN PART AS TO JAWISH AND CASE REMANDED FOR AN ACCOUNTING IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY JAWISH. JUDGMENT AFFIRMED AS TO CHEVY CHASE BANK, F.S.B. AND MARRIOTT. COSTS TO BE PAID BY FLAT IRON.