21 A.3d 173

PHOENIX LIFE INSURANCE COMPANY, et al.

v.

WACHOVIA BANK, N.A., et al.

No. 0562, Sept. Term, 2010.

Court of Special Appeals of Maryland.

June 1, 2011.

260

Ronald S. Canter, Rockville, MD, for appellant.

Gregory L. Lockwood (Treanor Pope & Hughes PA, on the brief) Towson, MD, for appellee.

Panel: ZARNOCH, WRIGHT, J. FREDERICK SHARER, (Retired, Specially Assigned), JJ.

WRIGHT, J.

Appellant, Phoenix Life Insurance Company ("Phoenix"), filed requests for garnishment of property, in the Circuit Court for Baltimore City, directed to appellee Wachovia Bank, N.A. ("Wachovia"). After issuance by the court clerk and service was effected, Wachovia answered the writs of garnishment by filing a confession of assets. Thereafter, Phoenix filed a motion to determine conditions for satisfaction of an order of condemnation as to one writ ("First Writ"), and a motion for judgment of condemnation as to a second writ ("Second Writ"). The court denied Phoenix's motion as to the First Writ and granted in part and denied in part the motion pertaining to the Second Writ. This appeal followed.

In essence, Phoenix asks us to determine whether the court erred in denying its motions.[1] For the reasons that follow, we find no error and affirm the judgment of the circuit court.

---

1. In its brief, Phoenix presented the following questions:

   1) Did the Circuit Court err by refusing to order the garnishee to pay over monies deposited by the judgment debtor into her bank account with the garnishee between the date of service of the first writ of garnishment and the entry of judgment of condemnation on the basis that the address of the debtor on the garnishee's records was a different address that [sic] the debtor's last known address that was listed both on the Court docket and on the writ issued by the Clerk?

## Facts and Procedural History

Phoenix obtained a judgment against Dinkins Dry Cleaners, Inc. ("DDC") and Lila Dinkins ("Dinkins") in the United States District Court for the District of Maryland. On May 9, 2005, it recorded the judgment in the Circuit Court for Baltimore City.

On May 6, 2008, Phoenix filed the request for the First Writ, wherein it named DDC and Dinkins the judgment debtors, and listed the address of "2142 W. North Avenue, Baltimore, Maryland 21217–1222" for both of them. On June 11, 2008, Wachovia filed an answer, stating:

THE GARNISHEE reports that it holds assets (other than wages) belonging to [DDC], consisting of the following as of the [sic] 5/28/2008, the date upon which attachment herein was served.

| Account Type | Account Number | Holding Amount |
|---|---|---|
| DDA | [ ]4219 | $877.45 |
| DDA | [ ]3212 | $285.58 |

There is nothing in the record to indicate that Wachovia filed an answer as to Dinkins, individually.[2]

On August 25, 2008, Phoenix filed a "Request for Judgment—Garnishment," along with a proposed order. On September 20, 2008, the court granted Phoenix's request and signed the proposed order, which stated:

... that judgment be, and is hereby, entered in favor of [Phoenix] in the amount of $1,163.03, and [Wachovia] shall

---

2) Did the Circuit Court err by refusing to enter a judgment of condemnation as to the second writ of garnishment of property other than wages for the total amount of funds that the judgment debtor deposited into her account from the date of service of the writ on the basis that the address of the debtor on the garnishee's records was a different address that [sic] the debtor's last known address that was listed on both the Court docket and on the writ issued by the Clerk?

**2.** In its brief, Wachovia acknowledges that Dinkins opened both bank accounts "as Secretary of [DDC]," and the account ending in –4219 was closed on September 20, 2008, while the account ending in –3212 was closed on July 30, 2008.

promptly pay over amount to [Phoenix], along with any additional funds of either of the Judgment Debtors that may have come into the hands of [Wachovia] subsequent to [Wachovia's] filing of its Confession of Assets, in an amount up to [Phoenix's] judgment against the Judgment Debtors and enforcement costs.

The case caption (or heading) for the court's order listed DDC and Dinkins as Judgment Debtors. A notice of recorded judgment was entered on October 9, 2008. On October 22, 2008, Wachovia paid the sum of $1,163.03 to Phoenix.

On February 26, 2009, the court issued the Second Writ, directing Wachovia to "hold the property of the Judgment Debtor named above subject to further proceedings." The writ listed the Judgment Debtor as:

Lila Dinkins

2142 W. NORTH AVENUE

Baltimore, MD 21217

On March 18, 2009, Wachovia filed an answer, reporting that "it holds no assets belonging to [Dinkins] the Defendant, as of the [sic] 3/12/2009, the date upon which attachment herein was served."

On September 11, 2009, Wachovia was again served with a writ of garnishment with respect to DDC. Subsequently, Wachovia filed a confession indicating that it held no assets belonging to DDC. On September 29, 2009, Phoenix sent a fax transmission to Wachovia attaching a request for writs of garnishment of property, which had been filed with the court on or about August 21, 2009. The request listed DDC and Dinkins as Judgment Debtors and specifically sought information related to an account ending in –5700. Although the court issued a writ on September 11, 2009, with respect to DDC, nothing in the record indicates that it issued a writ with respect to Dinkins.

After receiving the fax, Wachovia located a joint personal account belonging to Dinkins, with an account number ending in –5700. On October 21, 2009, Wachovia amended its answer to the Second Writ to state:

... that it holds assets (other than wages) belonging to [Dinkins] the Defendant, consisting of the following as of the [sic] 10/19/2009.

| Account Type | Account Number | Holding Amount |
|---|---|---|
| Crown Banking Account | [ ]5700 | $8,078.01 |

On January 14, 2010, Phoenix filed a motion to determine conditions for satisfaction of judgment of condemnation as to the First Writ, alleging, in part:

6. Attached hereto as Exhibit 1 are copies of monthly bank account statements reflecting that the sum of $19,916.21 came into the hands of [Wachovia] from the time it was served with the writ of garnishment until the entry of the judgment of condemnation.

\* \* \*

9. Because additional monies were received by [Wachovia] from the time the writ of garnishment was served and prior to the entry of judgment, the tender of $1163.03 is not a complete satisfaction of the judgment of condemnation.

10. There remains $18,753.18 due and owing to [Phoenix] pursuant to the Court's order of September 30, 2009.

Phoenix's Exhibit 1 included Wachovia Crown Classic Banking statements dated June 7, 2008, through October 9, 2008, for an account that listed Dinkins and Ethel G. Harrison, 3705 Ellamont Ave., Baltimore, MD 21215, as "Account owner(s)."

Phoenix also filed a motion for judgment of condemnation as to the Second Writ, arguing that under Maryland Rule 2–645(j) and *Messall v. Suburban Trust Co.,* 244 Md. 502, 508, 224 A.2d 419 (1966), "a garnishment binds not only the property of the Defendant in the hand of the garnishee at the time it is served, but also such property as may come into (its) hands at any time before trial and judgment." (Internal quotation marks omitted). Phoenix further alleged:

7. Commencing from the date of the service of the garnishment (March 11, 2009), the sum of $27,444.21 has come into the garnishee's hands from the Lila Dinkins' [sic] account identified in the confession of assets on October

21, 2009. This amount is derived from Exhibit 5, which are copies of the seven monthly checking account statements reflecting the receipt of $27,444.21 by Wachovia Bank from March 11, 2009 . . . .

8. Wachovia Bank is therefore liable to [Phoenix] in the sum of $27,444.21 in connection with the writ garnishment on property.

Phoenix's Exhibit 5 included Wachovia Crown Classic Banking statements dated March 7, 2009, through October 8, 2009, for an account that listed Dinkins and Ethel G. Harrison, 3705 Ellamont Ave., Baltimore, MD 21215, as "Account owner(s)."

On April 21, 2010, the court heard arguments from both parties with regard to Phoenix's motions. On April 26, 2010, the court denied in part and granted in part Phoenix's motion for judgment of condemnation as to the Second Writ. Relying on *Maryland Nat'l Bank v. Parkville Fed. Sav. Bank*, 105 Md.App. 611, 660 A.2d 1043 (1995) ("*MNB* "), *aff'd*, *Parkville Fed. Sav. Bank v. Maryland Nat'l Bank*, 343 Md. 412, 681 A.2d 521 (1996) ("*PFSB* "), the court stated:

[T]his Court has explained that the burden of obtaining a writ that properly identifies a judgment debtor rests on the judgment creditor. And it cites the [*Flat Iron Mac* ] *Associates* [*v.*] *Foley,* 90 Md.App. 281 [600 A.2d 1156 (1992) ]. The Court went on to say the burden to acquire a writ that accurately and specifically identifies the property to be attached rests on the judgment creditor for several reasons. In most cases, as with the instant case, the judgment creditor is better able to identify the assets that must be held than the garnishee, who is not a party to the original action.

It cites part of the Maryland Code in talking in terms of the duty and responsibility of banks as authoritative. Then it says, if you would please, if the garnishee does sequester or freeze assets of the debtor without the court order, it exposes itself to civil liability from the depositor whose property was improperly garnished. The case went on to say; as we stated in [*Flat Iron Mac* ] *Associates,* it's the

obligation of the judgment creditor to obtain a writ that properly identifies the property to be attached. And the garnishee is not required to look any further than the text of the writ itself.

The court "Ordered that a Judment of Condemnation be entered in favor of [Phoenix] against Garnishee, Wachovia Bank, NA in the sum of $8,078.01 only." On May 27, 2010, the court entered an order denying Phoenix's motion for conditions for satisfaction of judgment of condemnation as to the First Writ.

## Discussion

### I. First Writ

Phoenix argues that the circuit court erred by refusing to "direct Wachovia to pay Phoenix ... monies that Lila Dinkins deposited into her Wachovia account from the time of service of the garnishment until entry of the judgment of condemnation." Phoenix acknowledges that "the burden of obtaining a writ that specifically and accurately identifies the judgment debtor rests upon the judgement creditor," *PFSB*, 343 Md. at 422, 681 A.2d 521 (citations omitted), but contends that it "met its burden as established by Maryland Rule 2–645(b)," which states:

(b) *Issuance of writ.*—The judgment creditor may obtain issuance of a writ of garnishment by filing in the same action in which the judgment was entered a request that contains (1) the caption of the action, (2) the amount owed under the judgment, (3) the name and last known address of each judgment debtor with respect to whom a writ is requested, and (4) the name and address of the garnishee. Upon the filing of the request, the clerk shall issue a writ of garnishment directed to the garnishee.

Phoenix asserts that its request for the writ of garnishment "included all of the required information and, in Paragraph 6, asserted that Lila Dinkins' last known address was 2142 West North Avenue, Baltimore, MD 21217." According to Phoenix, "[t]he West North address is the same address listed for Ms.

Dinkins on the Court docket ... as of May 9, 2008," until Dinkins's counsel entered her appearance on October 8, 2009. Because the court issued a notice of judgment of condemnation between that time period (on October 9, 2008) and "did not receive any notice from the Postal Service that the mailing ... was not delivered as addressed," Phoenix contends that "the West North Avenue address was a valid, current address for Ms. Dinkins" and "the fact that Ms. Dinkins provided a different address to the bank is of no consequence." We disagree.

In *PFSB*, the Court of Appeals stated:

We concur with the Court of Special Appeals that the burden of obtaining a writ that specifically and accurately identifies the judgment debtor rests upon the judgment creditor. *Maryland National*, 105 Md.App. at 616, 660 A.2d at 1045. *See also Flat Iron*, 90 Md.App. at 294, 600 A.2d at 1162. A garnishee should not be required to engage in a questionable interpretation of a particular writ to determine whether the property of a particular judgment debtor is or is not to be garnished. *The face of the writ should clearly and unambiguously identify any and all judgment debtors whose property is to be garnished.* To hold otherwise would place an unfair burden on the garnishee. *Cf. Flat Iron*, 90 Md.App. at 294, 600 A.2d at 1162 (noting that *garnishee is "not obligated to search for the debtor under any name but that specified in the writ of garnishment" nor required "to make detailed inquiries as to the status of any account not listed in the writ to determine" if the funds belong to another party*).

The need for certainty in identifying the judgment debtors covered by a writ of garnishment is critical given that a writ requires the garnishee to take positive action and impound assets owned by another party. A banking institution may be held liable for damages if it improperly impounds assets of parties not covered by a writ. *See McHugh & Assoc. v. Comm. & Farm. Bk.*, 59 Md.App. 519, 527, 476 A.2d 736, 740, *cert. denied*, 301 Md. 353, 483 A.2d 37 (1984); *Andree v. Equitable Trust Co.*, 46 Md.App. 688,

693, 420 A.2d 1263, 1266 (1980). Hence, if a banking institution incorrectly interprets an ambiguous writ of garnishment and, as a result, impounds assets owned by a party not actually covered by the writ, the banking institution may be liable for any resulting damages. *See McHugh,* 59 Md.App. at 526–27, 476 A.2d at 740. At the same time, if the banking institution erroneously interprets an ambiguous writ of garnishment as not covering a party that turns out to be covered by the writ, and hence does not impound that party's assets, the bank could be liable to the judgment creditor. *See Bedding Co. [v. Warehouse Co.],* 146 Md. [479,] 492, 126 A. [902], 907 [ (1924) ].

*PFSB,* 343 Md. at 422–23, 681 A.2d 521 (footnote omitted) (emphasis added).

Phoenix attempts to differentiate this case from *PFSB* by noting that the Court of Appeals in that case held that the judgment creditor did not specifically and accurately identify the four judgment debtors when it listed only the first judgment debtor's name, followed by "et al." *Id.* at 422, 424, 681 A.2d 521. Phoenix argues that, by contrast, it "properly identified Lila Dinkins and correctly listed her last known address." Phoenix's narrow interpretation of *PFSB,* however, is flawed.

As previously stated, the *PFSB* Court required that a writ *"clearly and unambiguously identify* any and all judgment debtors whose property is to be garnished." *Id.* at 422, 681 A.2d 521 (emphasis added). "In most cases, as with the instant case, the judgment creditor is better able to identify the assets that must be held than the garnishee, who is not a party to the original action." *MNB,* 105 Md.App. at 616, 660 A.2d 1043.

In this case, Phoenix stated in its request for the First Writ that "[t]he last known address of Defendant/Judgment Debtor Lila Dinkins is 2142 W. North Avenue, Baltimore, Maryland 21217–1222." But, the Wachovia bank account later cited in Phoenix's motion to determine conditions for satisfaction of

judgment of condemnation listed the address of 3705 Ellamont Ave., Baltimore, MD 21215.

In applying its narrow interpretation of *PFSB,* Phoenix assumes that Wachovia only had one account holder named "Lila Dinkins." As such, Phoenix believes that, by providing her "last known address" of 2142 W. North Avenue, Baltimore, Maryland 21217–1222, Wachovia would be able to determine that Lila Dinkins, of 3705 Ellamont Ave., Baltimore, MD 21215, is the same Lila Dinkins who is listed as a judgment debtor. This assumption is fatal to Phoenix's argument because, had Lila Dinkins of West North Avenue been a separate individual from Lila Dinkins of Ellamont Avenue, and had Wachovia garnished monies from the wrong person, Wachovia would have been held liable for damages as a result of improperly impounding assets. *See MNB,* 105 Md.App. at 616, 660 A.2d 1043 ("under Md.Code (1974, 1992 Repl.Vol.), § 5–306 of the Financial Institutions Article, the bank, acting as garnishee, does not have authority to take any action regarding money or property in its possession without first receiving a court order directing the bank to impound the money or property") (additional citation omitted).

Assuming, for example, that the judgment debtor had a common name such as "John Smith" or "Mary Jones," Wachovia would not be expected to garnish monies from all account holders with that name, whether or not the address on the writ matched the address on the account. *See id.* ("If the garnishee does sequester or freeze assets of the debtor without a court order, it exposes itself to civil liability from the depositor whose property was improperly garnished.") (Citation omitted). Likewise, Wachovia is not expected to cross-check their extensive records of every account bearing that name in order to find the proper account to be garnished. *See Flat Iron,* 90 Md.App. at 294, 600 A.2d 1156 (the bank "was not obligated to search for the debtor under any name but that specified in the writ of garnishment, nor was [it] obligated to make detailed inquiries as to the status of any account not listed in the writ"). Rather, it is the judgment creditor's responsibility to state clearly, by providing the correct ad-

dress, which individual is a debtor and which account is subject to garnishment.

As Wachovia correctly points out, Phoenix was permitted to "obtain discovery to aid enforcement of a money judgment [ ] by use of depositions, interrogatories, and requests for documents." Md. Rule 2–633(a). Indeed, Phoenix filed such discovery on May 6, 2008, and on May 27, 2008, the court entered an order requiring that Dinkins appear before an auditor on July 30, 2008, "to be examined under oath." A writ of body attachment was issued on December 4, 2008, and after Phoenix filed a motion for constructive civil contempt, the court issued a show cause order on July 10, 2009. Based upon this record, we agree with Wachovia that Phoenix "had numerous opportunities to determine where Ms. Dinkins resided and whether she had a personal bank account" listed under a separate address.

Phoenix's request for the First Writ included a different address than that listed in the bank account at issue, and thus, Phoenix failed to "clearly and unambiguously identify" Lila Dinkins of 3705 Ellamont Ave., Baltimore, MD 21215, as the judgment debtor whose property was to be garnished. The court acted properly in denying Phoenix's motion for conditions for satisfaction of judgment of condemnation.

## II.  Second Writ

■ Next, Phoenix argues that the circuit court erred when it refused to award "a judgment of condemnation as to the Second Writ for the total amount of the funds that the judgment debtor had deposited into her account from the date the writ was served until the hearing on the motion for condemnation." Relying on Maryland Rule 2–645(j), Phoenix seeks the amount of $27,444.21, which "was deposited into the Crown Banking account from the date of service until the motion for judgment came for a hearing on April 21, 2010." Because the court limited Wachovia's liability to the $8,078.01

that it confessed, Phoenix argues that the court "wrongfully deprived Phoenix of an additional $19,366.20."

Maryland Rule 2–645(j) states:

(j) *Judgment.*—The judgment against the garnishee shall be for the amount admitted plus any amount that has come into the hands of the garnishee after service of the writ and before the judgment is entered, but not to exceed the amount owed under the creditor's judgment against the debtor and enforcement costs.

In this case, Phoenix filed its request for the Second Writ on or about February 26, 2009, and listed both DDC and Dinkins as judgment debtors. Although the court issued a writ with respect to DDC, nothing in the record indicates that it issued a writ with respect to Dinkins. Not until October 21, 2009, was Wachovia made aware that the Second Writ also pertained to Dinkins. As a result, Wachovia amended its answer to state that as of October 19, 2009, it held $8,078.01 in assets belonging to Dinkins, in an account ending in the numbers – 5700.

We reiterate that "[t]he burden to acquire a writ that accurately and specifically identifies the property to be attached rests on the judgment creditor." *MNB*, 105 Md.App. at 616, 660 A.2d 1043. Although it deals with the filing and indexing of notices of *lis pendens*, the Court of Appeals's decision in *Greenpoint Mortgage Funding, Inc. v. Schlossberg*, 390 Md. 211, 888 A.2d 297 (2005), is instructive. In that case, receivers were appointed in a pending divorce for the purpose of preserving and liquidating properties. *Id.* at 216, 888 A.2d 297. The receivers filed notices of *lis pendens*, listing several properties owned by the husband. *Id.* at 217, 888 A.2d 297. "Apparently, the Clerk of the Circuit Court for Montgomery County as well as the Clerk of the Circuit Court for Prince George's County, both had indexed the notice of *lis pendens* under the name of [the wife], not in the name [of the husband]." *Id.* at 219, 888 A.2d 297. Meanwhile, the husband executed and delivered a deed of trust, apparently creating an encumbrance in favor of World Savings Bank and its trustee

as to one of the properties, in order to secure a loan in the amount of $ 98,000.00. *Id.* at 218, 888 A.2d 297. Husband also executed, in favor of Greenpoint Mortgage, a promissory note for a loan in the principal amount of $45,500.00, secured by a deed of trust encumbering the same property. *Id.* Because the notices of *lis pendens* were indexed under the wife's name, the husband's lenders did not find the notices in their pre-lending searches. *Id.* at 219, 888 A.2d 297. Subsequently, the receivers filed complaints in circuit court asserting that " 'any persons interested in any of the [Husband's] property ... were provided constructive and actual notice of the pendency of the Divorce Case and Receivership, as well as the vested title of the Receivers therein.' " *Id.* at 218, 888 A.2d 297. The court granted judgment in favor of the receivers, and the lenders appealed. *Id.* at 221, 888 A.2d 297.

After granting a writ of certiorari in the appeal, and before review by this Court, the Court of Appeals reversed and held that "a party seeking to establish a notice of *lis pendens* is charged with the duty to assure the correctness of the recording and indexing of the instrument he or she has filed." *Greenpoint,* 390 Md. at 216, 888 A.2d 297. The Court further stated that "mistakes should be at the risk of the person who had the ability to insure that the document was indexed correctly—the filer." *Id.* at 235, 888 A.2d 297. Thus, the *Greenpoint* Court "decline[d] to adopt the view taken by [other] jurisdictions that relieves the person seeking to record the instrument or file the lien from the burden of assuring the document's proper recording and indexing." *Id.* at 245, 888 A.2d 297.

In this case, Phoenix was the party that filed the request for the Second Writ, and therefore, it had the duty to assure the correctness of the instrument. Any mistakes made by the clerk of the court in issuing the writ must be borne by Phoenix, as it was the party who had the *ability to insure* that the writ was issued correctly. Wachovia cannot be held responsible for not receiving service of a writ as to Dinkins, after Phoenix filed its request on February 2009. On October 21, 2009, after learning that the Second Writ also pertained to

Dinkins, Wachovia amended its answer to include the $8,078.01 that was present in Dinkins's personal account at that time. Then, pursuant to the court's April 26, 2010 order, Wachovia garnished that amount from the account and paid it over to Phoenix.

We agree with the circuit court that "the garnishee is not required to look any further than the text of the writ itself." The court, therefore, acted properly in limiting the judgment of condemnation to $8,078.01.

For all of the foregoing reasons, we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**