834 A.2d 993

**The HARBOR BANK OF MARYLAND**

v.

**HANLON PARK CONDOMINIUM ASSOCIATION, Inc.**

**No. 02123, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Oct. 31, 2003.

Joseph C. Reid of Baltimore, for appellant.

Marvin I. Singer (Michael H. Mannes on the brief), of Baltimore, for appellee.

Argued before HOLLANDER, KENNEY and KRAUSER, JJ.

KRAUSER, Judge.

We are asked to decide whether a bank is liable to a garnishor for the funds it released from the account of a judgment debtor, upon the presentation of a bona fide check drawn on that account, only a few hours after it had been served with the writ of garnishment. Holding that the bank's liability began the moment the writ was served, the Circuit Court for Baltimore City granted the motion for judgment of the garnishor, appellee Hanlon Park Condominium Association, Inc. ("Hanlon Park"), and entered judgment against the garnishee, The Harbor Bank of Maryland ("Harbor Bank"). But in doing so, it erred. The court should have considered, before ruling, whether Harbor Bank had a reasonable opportunity to act on the writ of attachment before releasing the funds in question. If it did not, then it was not liable for those funds. Hence, we shall remand this case for trial on that issue.

## FACTS

Hanlon Park obtained a judgment against its managing agent, Canfield Property Management, Inc. and Canfield Property's president, Torrie Johnson. To collect that judgment, Hanlon Park served Ms. Johnson's employer, the Sickle Cell Association of Maryland, Inc. ("Sickle Cell") with a writ of garnishment of wages. When Sickle Cell failed to respond to

the writ, the circuit court entered a default judgment against it in the amount of $51,063.97.[1]

To collect the "Sickle Cell" judgment, Hanlon Park served Harbor Bank, where Sickle Cell maintained two checking accounts, with a writ of garnishment of property at 11:41 am on June 25, 2001.[2] But, at 2:14 pm that day, the Bank was presented with a Sickle Cell check in the amount of $15,000, made payable to "Petty Cash Cashier" and signed by Torrie Johnson in her capacity as an officer of Sickle Cell. In accordance with that check, Harbor Bank released $15,000 from Sickle Cell's account and those funds were then converted into a cashier's check made payable to "Torrie Johnson" and endorsed by her.

Sometime later, Harbor Bank answered the writ of garnishment, stating that it was "in possession of $5,600.58 in assets" of the judgment debtor, Sickle Cell. When Hanlon Park challenged Harbor Bank's confession of assets, it was disclosed that the Bank had released $15,000 from Sickle Cell's accounts approximately two and a half hours after it had been served with Hanlon Park's writ of garnishment. That caused Hanlon Park to move for judgment against Harbor Bank.

At the hearing on that motion, Harbor Bank argued that it was not liable to Hanlon Park for disbursing those funds because it was not given a reasonable amount of time to place a "hold" on Sickle Cell's accounts before the funds were withdrawn. According to Harbor Bank, "[i]t takes at least two or three days before a writ of garnishment can be effectuated throughout the bank." Declaring "I do not see that the law permits the bank any time" the circuit court held Harbor Bank liable for releasing the debtor's assets "from the

---

1.   Sickle Cell subsequently moved to vacate the default judgment. That motion was granted, and the default judgment was vacated. But, later, upon Hanlon Park's motion the default judgment against Harbor Bank was reinstated.

2.   Hanlon Park also served a writ of garnishment proceedings on Chevy Chase Bank directed at any Sickle Cell assets held there. That writ is not at issue here.

moment that the writ of garnishment [was] served." It then granted Hanlon Park's motion and entered a judgment for $15,000 plus pre-judgment interest in favor of Hanlon Park.[3]

## DISCUSSION

### I

██ Harbor Bank contends that the circuit court erred in granting Hanlon Park's motion for judgment because two and a half hours was not a reasonable amount of time for it to process the writ of garnishment and place a "hold" on Sickle Cell's accounts.

██ Initially, we note that "garnishment is a form of attachment." *Simpson v. Consol. Constr. Servs., Inc.*, 143 Md.App. 606, 619, 795 A.2d 754 (2002), *aff'd in part and rev'd in part on other grounds*, 372 Md. 434, 813 A.2d 260 (2002); *Catholic Univ. of Am. v. Bragunier Masonry Contractors*, 139 Md.App. 277, 293, 775 A.2d 458 (2001), *aff'd*, 368 Md. 608, 796 A.2d 744 (2002). "It is 'a means of enforcing a judgment,' which 'allows a judgment creditor to recover property owned by the debtor but held by a third party, the garnishee.' " *Simpson*, 143 Md.App. at 619, 795 A.2d 754 (quoting *Parkville Fed. Sav. Bank v. Md. Nat'l Bank*, 343 Md. 412, 418, 681 A.2d 521 (1996)). A writ of garnishment "preserve[s] the assets of the judgment debtor by creating an 'inchoate lien' that is binding and prevents the garnishee from disposing of those of the assets in his possession until such time as a judgment is entered in the garnishment proceeding." *Catholic Univ.*, 139 Md.App. at 294, 775 A.2d 458. The general rule is that "[o]nce the writ of garnishment is issued and laid in the hands of the garnishee, he is bound to safely keep the assets of the debtor in his possession, together with any additional assets that

---

**3.** Harbor Bank also released an additional $5,600 from Sickle Cell's account after the default judgment against Sickle Cell had been vacated, but before the court struck that order vacating the judgment. The court did not award Hanlon Park this $5,600, and it is not an issue before this Court.

come into his possession up to the time of trial." *Id.* at 293, 775 A.2d 458. "Hence, if the garnishee surrenders the property after service of the writ but prior to judgment, the garnishee is liable to the judgment creditor for the value of the debtor's property released." *Parkville Fed. Sav. Bank,* 343 Md. at 419, 681 A.2d 521.

But there is at least one exception to this rule and that exception is set forth in Md.Code (1975, 2002 Repl.Vol.), § 4–303(a) of the Commercial Law Article ("CL"), which is almost a word-for-word adoption of § 4–303(a) of the Uniform Commercial Code. *See* U.C.C. § 4–303(a) (1990). CL § 4–303(a), redacted to exclude extraneous verbiage, states:

> [A]ny ... legal process served upon, ... a payor bank, comes too late to terminate, suspend, or modify the bank's right or duty to pay an item or to charge its customer's account for the item, if the ... legal process is received or served *and a reasonable time for the bank to act thereon expires* ... after the earliest of the following:
>
> (1) The bank accepts ... the item
>
> (2) The bank pays the item in cash; ....

(Emphasis added).

In interpreting statutory language, "we look first to the words of the statute," giving them their "natural and ordinary signification, bearing in mind the statutory aim and objective." *Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483 (1992). "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204 (1994).

The words of CL § 4–303(a) plainly require a bank to secure funds it holds within a "reasonable time" after being served with legal process—in this case a writ of garnishment—to prevent the payment of an item. The "item" in this instance was the Sickle Cell check presented by Ms. Johnson, ordering Harbor Bank to disburse $15,000 of Sickle Cell's

funds.[4] The unexpressed but implied corollary of this rule is that if the bank is presented with an "item" before it has had a reasonable amount of time to respond to a writ of garnishment, it may properly pay that item. And, under well-established Maryland law, if the payment was proper, the bank, as the garnishee, cannot be liable to the judgment creditor for funds it no longer possesses. *Walsh v. Lewis Swimming Pool Constr. Co.*, 256 Md. 608, 610, 261 A.2d 475 (1970) ("In an attachment action the test of the liability of the garnishee is whether he has funds, property or credits in his hands, the property of the debtor, for which the debtor would have the right to sue.").

Although our appellate courts have not previously interpreted this section of the Maryland Code, the Supreme Court of Connecticut has in *W & D Acquisition, LLC v. First Union Nat'l Bank*, 262 Conn. 704, 817 A.2d 91 (2003), having also adopted § 4–303 of the Uniform Commercial Code and reached the same conclusion. *Id.* at 95. Indeed, in that case, the Connecticut court faced a set of facts similar to those now before us. There, a customer withdrew funds from its account three hours after the bank was served with a pre-judgment garnishment directing it to hold the customer's funds to secure a potential judgment. *Id.* at 94. The issue before the Connecticut court was whether the bank was liable for having failed to secure those funds within a "reasonable time" after being served with garnishment process. *See id.* The trial court held that it was not. *Id.* Applying a "midnight deadline" provision from another section of the Connecticut Code to the "reasonable time" provision, the trial court held that the bank had until midnight on the next banking day to secure the garnished funds. *See id.*

The Connecticut Supreme Court reversed but only on the ground that the midnight deadline did not apply and that the

---

4. "Item" is defined under CL § 4–104(a)(9) as "an instrument or a promise or order to pay money handled by a bank for collection or payment." An "order" is defined under CL § 3–103(a)(6) as "a written instruction to pay money signed by the person giving the instruction."

issue of what was a reasonable amount of time was "a fact-specific inquiry." *Id.* at 97. In rejecting the notion that the midnight deadline creates a "bright-line rule" of what is "reasonable time," the Connecticut appellate court pointed to Official Comment 6 to § 4–303 of Uniform Commercial Code, which also accompanies our state version of that provision. *Id.* Comment 6 provides: "In the case of . . . legal process the effective time for determining whether [it was] received too late to affect the payment of an item and a charge to the customer's account by reason of such payment, is receipt plus a reasonable time for the bank to act on [the service of process] . . . ." CL § 4–303 cmt. 6.

Offering some general guidance as to what is "reasonable time," the comment observes: "Usually a relatively short time is required to communicate to the accounting department advice of one of these events but certainly some time is necessary." *Id.* That observation should be kept in mind by the circuit court when this issue is considered on remand.

Before concluding our review of this matter, we note that Hanlon Park cites several cases holding that a bank, once served with legal process, must hold the property until the entry of the judgment. *Parkville Fed. Sav. Bank,* 343 Md. at 419, 681 A.2d 521 ("Once obtained and properly served on the garnishee, a writ of garnishment requires the garnishee to take positive action by holding the property until the entry of judgment in the garnishment action."); *Int'l Bedding Co. v. Terminal Warehouse Co.,* 146 Md. 479, 492, 126 A. 902 (1924) ("[F]rom the time of the garnishment, the goods in the possession of the garnishee . . . are considered as *in custodia legis,* and the garnishee is bound to keep them safely . . . ."); *Catholic Univ.,* 139 Md.App. at 293, 775 A.2d 458 ("Once the writ of garnishment is issued and laid in the hands of the garnishee, he is bound to safely keep the assets of the debtor in his possession . . . ."); *Flat Iron Mac Assocs. v. Foley,* 90 Md.App. 281, 292, 600 A.2d 1156 (1992) ("The effect of laying the attachment in the hands of the garnishee is to warn and notify her that all property of the debtor . . . is subject to the inchoate lien of the attachment by garnishment," and "[o]nce

served with a writ of garnishment 'it is the garnishee's duty to hold the attached assets until the entry of a judgment in the garnishment action.' "); *see also* PAUL V. NIEMEYER & LINDA M. SCHUETT, MARYLAND RULES COMMENTARY 520 (2d ed.1992), ("[T]he garnishee must take immediate precautions to protect the assets.").

Although these cases support the general rule that a garnishee is bound to secure the judgment debtor's property from the time it is served with a writ of garnishment until judgment is entered, none of them involved the service of a writ of garnishment upon a bank and CL § 4–303, which applies in such instances.

And finally, we do note the circuit court did appear on several occasions to sympathize with Harbor Bank's representations that it had exercised reasonable diligence in processing the writ of garnishment. But we also note that no evidence was ever presented by Harbor Bank as to why it takes at least two or three days to place a hold on an account and no actual finding was ever made by the circuit court that that was a reasonable amount of time to do so. For these reasons, we vacate the circuit court's judgment and remand this matter to that court for proceedings consistent with this opinion.

Harbor Bank raises one other issue. It contends that the circuit court "erred in granting [Hanlon Park's] motion for judgment because any lien of garnishment of [Hanlon Park] as against [Sickle Cell] is 'voided' by said customer's bankruptcy filing and related order of the [c]ircuit [c]ourt." This contention, as stated, is misleading. It was not Sickle Cell, but Torrie Johnson, who filed for bankruptcy. And it was her, not Sickle Cell, against whom the circuit court stayed proceedings.

**JUDGMENT VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**