The Garnishee failed to impound the sum of $ 66,569.58 that it had in its possession.
The Garnishee is liable to the Plaintiff in the same amount the Garnishee had in its possession.
Pursuant to [Ark. Code Ann.] § 16-110-406(a), which governs garnishee banks, this Court grants judgment to the Plaintiff.
II.
This appeal requires us to interpret statutes, so the standard of review is de novo. Wal-Mart Stores, Inc. v. D.A.N. Joint Venture III, L.P. , 374 Ark. 489, 490-91, 288 S.W.3d 627, 629 (2008). Here are the two main statutory sections at issue in the case. Arkansas Code Annotated section 4-4-303, which the bank says controls this case, states:
(a) Any knowledge, notice, or stop-payment order received by, legal process served upon, or setoff exercised by a payor bank comes too late to terminate, suspend, or modify the bank's right or duty to pay an item or to charge its customer's account for the item if the knowledge, notice, stop-payment order, or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the earliest of the following:
(1) The bank accepts or certifies the item;
(2) The bank pays the item in cash;
(3) The bank settles for the item without having a right to revoke the settlement under statute, clearinghouse rule, or agreement;
(4) The bank becomes accountable for the amount of the item under § 4-4-302 dealing with the payor bank's responsibility for late return of items; or
(5) With respect to checks, a cutoff hour no earlier than one (1) hour after the opening of the next banking day after the banking day on which the bank received the check and no later than the close of that next banking day or, if no cutoff hour is fixed, the close of the next banking day after the banking day on which the bank received the check.
(b) Subject to subsection (a), items may be accepted, paid, certified, or charged to the indicated account of its customer in any order.
Ark. Code Ann. § 4-4-303 (Repl. 2001) (emphasis added). Section 4-4-303, comment 6, states that the mere receipt of the writ by the bank does not mean that the writ can be immediately acted on. Comment 6 to Ark. Code Ann. § 4-4-303 (Repl. 1995) (Vol. A). "Usually a relatively short time is required to communicate to the accounting department advice of one of these events but certainly some time is necessary." Id.
In contrast, Arkansas Code Annotated section 16-110-406, which the General Assembly enacted early in the twentieth century, provides:
(a) If any garnishee that is a bank, savings bank, or trust company domiciled in this state, after having been served with a writ of garnishment ten (10) days before the return day thereof, shall neglect to answer on or before the return day the writ or any interrogatories which have been exhibited against it, the court or justice before whom the *200 matter is pending shall enter judgment in general terms against the garnishee. The general judgment shall be deemed to be for costs of the garnishment and for an amount not exceeding the full amount specified in the plaintiff's judgment against the original defendant and also not exceeding the amount or value in which at the time when served and thereafter up to and including said return day the garnishee was indebted, or had in its hands or possession goods, chattels, moneys, credits, and effects belonging to the original defendant.
(b) At any time after the general judgment the plaintiff may have, from the court or justice in the matter, a discovery against the garnishee and at its cost to ascertain the specific amount due thereunder.
Ark. Code Ann. § 16-110-406 (Repl. 2016) (emphasis added). An interpretation of a statute by an appellate court becomes a part of the statute itself. Pifer v. Single Source Transp. , 347 Ark. 851, 857, 69 S.W.3d 1, 4 (2002). Arkansas's appellate courts have long interpreted garnishment statutes like this one to mean that a creditor-garnishor has a lien on all the defendant's property as soon as the writ is served on the garnishee. Woodcock v. First Commercial Bank , 284 Ark. 490, 683 S.W.2d 605 (1985) ; see also L & S Concrete Co. v. Bibler Bros. , 34 Ark. App. 181, 186, 807 S.W.2d 50, 52 (1991) (relying on Magnolia Petroleum Co. v. Wasson , 192 Ark. 554, 92 S.W.2d 860 (1936) ). Immediately, in other words.
Here, Eagle Bank argues that it should not be liable for the amount transferred from Bid Central's account on August 4 because section 4-4-303 gives banks a reasonable time to comply with legal process, garnishments are included in the "legal process" category, and the bank did not have a reasonable time to prevent the wire transfer. According to the bank, the circuit court erred when it deemed the section "not applicable" and declined to determine whether the bank had a reasonable time to comply with the writ. The bank points to cases from other states' courts that have rejected the view that a writ of garnishment is immediately effective upon service because the Uniform Commercial Code provides banks a reasonable time after receiving a writ of garnishment to process it. See Harbor Bank of Maryland v. Hanlon Park Condo. Ass'n Inc. , 153 Md.App. 54, 834 A.2d 993 (2003) (holding that bank's liability did not begin the moment that judgment creditor served writ of garnishment); see also W & D Acquisition, LLC v. First Union Nat'l Bank , 262 Conn. 704, 817 A.2d 91 (2003) (holding that what is a reasonable time period in which a bank must comply with garnishment process is a factual question). Raynor maintains that the circuit court's "spot-on interpretation and application of the law in light of the facts of this case" should be affirmed because Arkansas law has long required the bank to have immediately impounded the funds Bid Central deposited into its open-then-closed-then-reopened account on August 4; and because the bank failed to do so, the judgment is legally justified.
Eagle Bank's reliance on cases from Maryland and Connecticut, for example, is understandable. See 3A Norman J. Singer, Sutherland Statutory Construction § 68:2 (8th ed.) ("Where a legislature adopts a statutory provision modeled on a uniform act, courts refer to decisions from other states and the federal judiciary and construe the act the same way as other jurisdictions to provide consistency and uniformity in the law."). Our research has not returned one Arkansas Supreme Court decision that has interpreted section 16-110-406 since it did so in Woodcock ; only one unpublished court of appeals opinion was *201 located. And no appellate decision in Arkansas has yet addressed section 4-4-303 in a postjudgment garnishment proceeding.
Assuming, but not deciding, that Eagle Bank properly answered the writ of garnishment, we agree with the circuit court that the bank was required to hold nonexempt money belonging to Bid Central as soon as the writ was served on the bank. Section 16-110-406 requires a bank to lien all money "at the time" the writ is "served." See also Ark. Code Ann. § 16-110-403 (providing that the interrogatories request the garnishee to recite any money it possesses "at the time of the service of the writ or any time thereafter"). We grant that section 4-4-303 permits a "payor bank" a "reasonable time" to process a legal document after it is "received" or "served." (We are not, however, deciding whether Eagle Bank was in fact a payor bank under the statute. We only assume for the sake of answering the timing question that it was.) Because the garnishment statute is the more specific one relative to the particular question at hand, we hold that it is the controlling authority. A general statute yields to a specific one involving the same subject matter. Bd. of Trs. for City of Little Rock Police Dep't Pension & Relief Fund v. Stodola , 328 Ark. 194, 201, 942 S.W.2d 255, 258 (1997). In this case, we are bound by the garnishment statutes and our supreme court's prior interpretations of them.
Article 4 defines the rights between parties with respect to bank deposits and collections. Comment 3 to Ark. Code Ann. § 4-4-101. The article was drafted and updated to remove state-law barriers so that banks could use automated systems to process and collect checks. Comment 2 to Ark. Code Ann. § 4-4-101. See also Ark. Code Ann. §§ 4-4A-101 to -507 (Repl. 2001 & Supp. 2017) (statutes governing wire transfers). Article 4 does not, however, enact a scheme by which a judgment creditor may pursue satisfaction against a judgment debtor, which is the essential purpose of this state's garnishment laws. See, e.g. , Ark. Code Ann. §§ 16-110-401 to -417.
We hold that the circuit court did not err in applying the garnishment statutes instead of Article 4 and affirm its judgment.
Affirmed.
Klappenbach and Glover, JJ., agree.