HALLER ET AL. *v.* WHITE

[No. 181, September Term, 1961.]

506

*Decided May 7, 1962.*

The cause was argued on February 14, 1962, before HEN-
DERSON, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

The cause was reargued on April 30, 1962, before BRUNE,
C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MAR-
BURY and SYBERT, JJ.

*William E. Kirk* for appellants.

*George B. Woelfel* for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree awarding the appellee the sum of $7,500, representing one-half of the balance in a certain savings account. A cross appeal challenges the failure to divide the accumulated interest.

Helen Stallings, a semi-invalid now over eighty years of age, has resided in Annapolis since 1928 with her daughter, Helena S. Haller. In 1954, her sister, Sadie Poole, moved to Annapolis, where she rented an apartment. She was a childless widow who at the time of her death in 1960 was seventy-nine years of age. Between June 29, 1954, and January 6, 1955, she deposited various sums in a savings account in the County Trust Company in her own name, her balance on the latter date being $26,782.81. On October 10, 1956, she executed another signature card in the name of "Sadie P. Poole, in trust for self and Helen P. Stallings, joint owners, subject to the order of either; the balance at death of either to belong to the survivor". At that time her balance was about $23,000.00.

On March 5, 1957, she withdrew $15,000.00 from that account, leaving about $7,800.00. She received the money in cash, and Mrs. Haller testified that she accompanied her aunt to the First Federal Savings and Loan Association of Annapolis, where it was deposited in a savings account. The signature card bore the names of Helena S. Haller and Marguerite P. White, another niece of Mrs. Poole, the daughter of a deceased brother. Mrs. White testified that she was present when this account was opened and that Mrs. Poole was not present. On this card the language as to a trust was striken out, and the parties were described as Helena S. Haller and Marguerite P. White "joint owners * * * both to sign for withdrawal". Mrs. White testified that they "both received instructions as to how the money was to be deposited." On March 8, 1957, Mrs. Haller and Mrs. White, by joint signatures, transferred the account into the name of "Marguerite P. White in trust for

herself and Helena S. Haller, as joint owners, subject to the order of either, the balance at death of either to belong to the survivor". Mrs. Haller took possession of the bank book. Mrs. Haller and Mrs. White both testified that this was done so that either might draw funds in an emergency.

On October 30, 1957, Sadie P. Poole and Helen Stallings executed a bond to save harmless the County Trust Company from any claim resulting from the loss or destruction of the bank book, evidencing their joint trust account, which at that time stood at $6,148.88. There was testimony that this was because Mrs. Poole had lost the bank book.

Helena S. Haller made various withdrawals from the interest accruing in the First Federal account, and collected Mrs. Poole's Social Security and insurance checks. She made numerous payments to, or on behalf of Mrs. Poole, to pay her bills and take care of her financial needs. Both Mrs. Haller and Mrs. White performed various personal services for Mrs. Poole, as her health had failed. After her death on April 26, 1960, Mrs. Haller paid her debts and funeral expenses and, without consulting Mrs. White, withdrew the entire balance of some $15,000.00, and deposited it in a new joint trust account in her name and that of her mother, Helen Stallings. The balance in the County Trust Company account was likewise withdrawn and added to the new joint account.

Learning of the withdrawal, the appellee filed a bill alleging fraudulent conversion. The appellant answered denying any fraud, and contending that it was always the intention of Mrs. Poole that her money should go to her sister; that the First Federal account was opened to prevent Mrs. Poole from making improvident withdrawals, and to obtain a better interest rate; that Mrs. Haller and Mrs. White were to act as trustees only.

Neither of the parties to this suit was permitted to testify as to conversations with the decedent, Mrs. Poole, and no question is raised as to the correctness of these rulings, although no administration was taken out on Mrs. Poole's estate. She died intestate, and there were a number of other nieces and nephews who survived Mrs. Poole as next of kin. Mrs. White

testified without objection that Mrs. Haller told her at the time the First Federal account was opened that the money "was to be divided between us, if my aunt did not need it". Mrs. Haller denied that she made the statement or ever discussed the matter with Mrs. White. Mr. Atwell, an officer of the County Trust Company and a director of the First Federal, testified that Mrs. Haller consulted him in 1957. She told him that Mrs. Poole had been drawing funds from principal and spending it for purposes she could not explain, and that "they were afraid she would dissipate them and wind up * * * indigent". He advised her that it would be prudent for the nieces to open a new account so that a substantial part of the money should be beyond the control of Mrs. Poole. He also testified that the First Federal paid $3\frac{1}{2}\%$ interest at that time, while the County Trust paid only $2\%$. Mr. Atwell identified Mrs. Poole's signature upon the $15,000 withdrawal slip, but he did not intimate that he had any personal contact with Mrs. Poole in the transaction.

It is conceded that so far as the balance in the County Trust Company is concerned, this money passed to Mrs. Stallings as survivor under the joint trust account upon the death of Mrs. Poole. As to the $15,000 withdrawn by Mrs. Poole and deposited in the First Federal account it is likewise clear that the legal effect of the withdrawal was to revoke *pro tanto* the trust in favor of Mrs. Poole and her sister. It is undisputed that Mrs. Poole received this money in cash, and that the new account was opened with her knowledge and consent, whether she was present or not. The legal effect of the entry in the names of Mrs. Haller and Mrs. White as "joint owners * * * both to sign for withdrawal," was to create a joint tenancy with right of survival. Cf. *Mitchell v. Register of Wills*, 227 Md. 305, 309, and cases cited. We are not here concerned with a reservation of a *locus penitentiae*, as in *Whalen v. Milholland*, 89 Md. 199, since the pass book was delivered to Mrs. Haller. Moreover, Mrs. Poole was not named as a trustee or beneficiary and on the face of the transaction retained no dominion over the fund or any right of withdrawal or revocation. Cf. *Allender v. Allender*, 199 Md. 541, 546 and *Pomerantz v. Pomerantz*, 179 Md. 436, 439. In form and legal ef-

fect the entry satisfied the requirements of a completed gift *inter vivos,* subject, of course, to proof of a contrary intention on the part of Mrs. Poole.

The appellant contends that Mrs. Poole delivered the money to Mrs. Haller and agreed to the opening of the account in the names of the two nieces as joint owners, merely as a convenience and in order that they might withdraw funds for her benefit. The appellee agrees that the money was to be used for the "needs" of Mrs. Poole during her lifetime. There is a sharp conflict in the testimony as to what was her intention in regard to the disposition of the balance remaining in the account at her death. Mrs. Haller contends that it was Mrs. Poole's intention that the balance be paid to Mrs. Stallings; Mrs. White contends that it was her intention that it be divided between the two nieces. There is a third possibility that the balance might be payable to Mrs. Poole's estate.

The mere fact that the fund was to be used primarily for the needs of Mrs. Poole during her lifetime would not necessarily defeat or invalidate a gift *inter vivos* of the balance remaining at death. *Farmer v. Associated Professors of Loyola College,* 166 Md. 455, 463; *Howard v. Hobbs,* 125 Md. 636, 641. See also *Kelley v. Kelley,* 178 Md. 389, 398 and *Curley v. Wolf,* 173 Md. 393, 397. Cf. *Hancock v. Savings Bank of Balto.,* 199 Md. 163, 173, *Bierau v. Bohemian Bldg., etc., Ass'n,* 205 Md. 456, 462 and *Jones, Adm. v. Hamilton, Adm.,* 211 Md. 371, 379. The question is as to the disposition of the remainder interest.

On this question we think the most significant fact is the form of the account which on its face creates a joint tenancy. It is true that this raises only a rebuttable presumption, but the burden is upon the party seeking to rebut it. Cf. *Blair, Exec. v. Haas,* 215 Md. 105, 115, and cases cited. There is no suggestion that Mrs. Poole was not fully competent or was unaware of the legal consequences of her action. We find no breach of a confidential relationship, if there was one. The fact that she left about one-third of the money in the original account in the County Trust Company, even after the loss of the passbook, might support an inference that she intended to

leave her money remaining at her death to the three persons closest to her. If we accept Mrs. White's testimony that Mrs. Haller told her that they were to divide the money at Mrs. Poole's death, and that the account was opened in their names as joint owners at the express direction of Mrs. Poole, the case would seem to present an issue of fact that was properly resolved by the decision of the chancellor awarding $7,500.00 to Mrs. White. It would seem natural that Mrs. Poole would have preferred to have the $15,000.00 divided between the two nieces who performed services for her, rather than to have it pass to other relatives upon her death intestate, or to her sister.

Of course, so far as the First Federal was concerned, Mrs. Haller had a right to withdraw the balance as she did. But the chancellor could properly impose a constructive trust to effectuate the gift in remainder, in accordance with the true intention of the donor. Cf. *Carter v. Abramo,* 201 Md. 339, 343. We think *Kornmann v. Safe Dep. & Tr. Co.,* 180 Md. 270, relied on by the appellant, is distinguishable on the facts. In that case it was held that a withdrawal from a joint trust account by a husband, of funds accumulated by the joint efforts of a husband and wife, operated to revoke the trust and was not open to attack on grounds of fraud. In the instant case we think the authority to withdraw granted by Mrs. White to Mrs. Haller did not operate to defeat a gift of the balance remaining at the death of the donor. Nor do we find insuperable objection in the suggestion that $7,500.00 is being forced upon Mrs. Haller, who claims that the whole balance belongs to her mother. After all, Mrs. Haller has transferred the whole sum into a joint trust account in the names of her mother and herself, subject to the order of either, balance at the death of either to belong to the survivor. The effect of the decree is to require that they both (the mother being a party) disburse $7,500.00 to Mrs. White.

We find no merit in the cross appeal. The record shows that the accumulated interest in the account was expended by Mrs. Haller for debts and funeral expenses of Mrs. Poole. We think, however, that the appellee required the printing of

repetitious matter in the record extract, and take account of this in the award of costs.

*Decree affirmed, costs to be paid, $135.00 by the appellee, the balance by the appellants.*

BRUNE, C. J., concurs in the result.

PRESCOTT and HORNEY, JJ., dissent.