RICHARD WANEX ET AL. v. PROVIDENT STATE BANK OF PRESTON

[No. 266, September Term, 1982.]

*Decided January 6, 1983.*

---

The cause was argued before *MOORE, LISS and ADKINS, JJ.

*William D. Hooper, Jr.,* with whom were *Joseph F. Lentz, Jr.* and *Lentz, Hooper, Jacobs & Blevins, P.A.* on the brief, for appellants.

*E. Thomas Merryweather,* with whom were *Harrington & Merryweather* and *Conrad L. McCulley* on the brief, for appellee.

PER CURIAM.

This appeal arises out of an attachment proceeding by Provident State Bank, appellee, to garnish the assets of Richard and Beverly Wanex, appellants. The assets were held by the appellee bank in a checking account. The Circuit Court for Dorchester County (Edmondson, J.) refused to quash the writ of garnishment and directed entry of a judgment of condemnation on the attachment. We shall affirm.

---

* *Reporter's Note:* Moore, J., participated in the hearing of this case and the decision thereon but died before the opinion was filed.

## I

Richard Wanex was engaged in the business of selling and repairing tractor trailers. He used various trade names in the business such as "Dick Wanex Truck and Trailer" and "Dick Wanex Trailer Sales and Repair." In 1967, Richard Wanex opened a business checking account with Provident State Bank under the name of "Dick Wanex Truck and Trailer." In April of 1980, this account was made subject to a signature card which authorized Richard Wanex, Beverly Wanex, or Renee Wanex to sign checks drawn on the account.

Renee Wanex, who was twenty-one years old at the time of trial, is the daughter of Richard and Beverly Wanex. She was employed as a secretary [1] by her father in his business. Because Renee Wanex received only a small salary of seventy-five dollars ($75) per week, she was allowed to make withdrawals from the account for her necessities. Although she deposited her 1980 personal income tax refund check in the account and had co-signed [2] a ten thousand dollar note, the proceeds of which were deposited in the account, in 1980 Renee Wanex did not deposit any personal funds in the Provident State Bank account.

Dick Wanex Truck and Trailer was neither a corporation nor a partnership, but rather was a sole proprietorship owned by Richard Wanex.[3] The checks printed for the use of tbe bank account were in the name of Richard Wanex.

In 1978, Richard and Beverly Wanex jointly signed a promissory note made payable to the appellee bank as a business loan. A second note was executed that year by appellants for the same purpose. Subsequently appellants

---

**1.** Renee Wanex received from her father the standard "W-2" forms reflecting her status as a salaried employee.

**2.** She had co-signed a promissory note with her father, mother, and two brothers in borrowing $10,000 from Louis Wanex, Sr.

**3.** The business was not registered as a corporation. There was no partnership return filed which reflected an ownership interest of Renee Wanex in the business. Richard Wanex filed his income tax returns as the owner of a sole proprietorship.

were in default and a judgment was entered against them in favor of appellee.

On November 21, 1980, appellee filed instructions to the clerk to issue a writ of attachment upon the judgment. Thereafter, on December 2, 1980, a writ of garnishment was issued and on December 4 the appellee bank was served. Between December 4 and December 8 Richard Wanex made four deposits into the subject account; the funds were generated from his business operation. The checks comprising the four deposits were made payable to "Dick Wanex" or "Dick Wanex Trailer Repair." [4]

On December 8, 1980, appellee notified Richard Wanex of the garnishment and that the account had been frozen. Beverly Wanex was served with process in the attachment proceeding on December 31, 1980 and Richard Wanex was served the following day. Renee Wanex was not served until November 17, 1981.

Appellants filed a motion to quash the attachment. The court below refused to grant appellants' motion and entered a judgment of condemnation on the attachment.

Appellants challenge the decision of the trial court on two grounds. First, they argue that the attachment was invalid in that it interfered with Renee Wanex's vested rights of ownership in the subject account because she was not a judgment debtor in the original action against appellants. Secondly, appellants claim that as "defendants" in the original action they were entitled to service of process in the post-judgment attachment proceeding prior to the actual garnishment.[5]

---

4. None of the deposits were made payable to Renee Wanex.

5. Although each party was eventually served with process in the post-judgment garnishment proceeding, service was not effected until after the account was frozen.

## II

In addressing the first issue raised by appellants, we note that our review of the trial judge's findings is governed by Rule 1086.

"When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

The lower court, in the case at bar, was not clearly erroneous in finding that Renee Wanex did not have an ownership interest in the Provident State Bank checking account. There was sufficient evidence before the court to conclude that it was an individual business account owned by Richard Wanex and maintained incident to the operation of his sole proprietorship, Dick Wanex Truck and Trailer. In merely permitting his daughter to withdraw money for her personal needs or authorizing her, as an employee, to sign checks drawn on the account, Richard Wanex did not relinquish his ownership rights in favor of Renee Wanex.

"Funds of defendant on deposit in a bank are subject to garnishment in the absence of special circumstances creating an exemption. However, the garnishing creditor can reach funds of the depositor only in cases where the depositor is the true owner thereof.

For the purposes of garnishment a bank deposit *prima facie* belongs to the person in whose name it stands, the general test being whether, but for the garnishment, the deposit would be subject to defendant's check, or whether defendant could sue the bank therefor in debt or assumpsit. These considerations, however, are not conclusive, and the fact that the depositor can withdraw or maintain an action for the deposit does not in all cases render the

deposit subject to garnishment at the instance of a creditor of the depositor."

38 C.J.S. Garnishment § 80 (1943) (footnotes omitted).

Furthermore, Renee Wanex did not deposit any personal funds in the account in 1980 as evidence of her ownership. The deposit of the proceeds of the promissory note which she co-signed did not necessarily mean that she held an ownership interest in the checking account. The note represented a business loan to the sole proprietorship owned by Richard Wanex. There was sufficient evidence that Dick Wanex Truck and Trailer was not a family partnership [6] nor

---

6. In the proceedings before the court below, it was argued that Renee Wanex had an ownership interest in the business and, therefore, claimed an ownership in the business bank account. The court, however, noted that no certificate of agency had been filed pursuant to Article 2, section 18 of the Annotated Code.

Article 2, Section 18 provides:

"Any person or persons, engaged in any mercantile, trading or manufacturing business as an agent or agents or doing business in any name or under any title or designation other than his or their own name or names, shall, within thirty days from June 1, 1922, or thereafter prior to commencing such business, file in the office of the clerk of the circuit court for the county wherein such business is conducted, or in the office of the clerk of the Superior Court of Baltimore City, if such business be located in said city and with the Department of Assessments and Taxation, a certificate in writing, under oath, disclosing the true and correct name or names and the address or addresses of the principal or principals or true owner or owners of the said business, the character and location thereof and the name, title or designation under which said business is conducted . . ."

Article 2, Section 20 of the Code provides:

"If any person or persons, so conducting any such business, as agent or agents, or in any name or under any title or designation other than in the real name or names or the true owner or owners thereof, shall fail to file the certificate provided for in § 18 of this article, then and in that event any person or corporation who shall become a creditor of such person or persons for money, merchandise or anything of value furnished or supplied for the use or benefit of such business, shall have the right to maintain a suit or action in any court having jurisdiction against such person or persons, or in the name, title or designation under which said business is being conducted, and process in such suit or action when served upon such person or persons so doing business and in charge thereof, shall entitle such creditor, upon legal proof of the claim of such creditor, to a judgment, and all of the goods, merchandise, fixtures, machinery, chattels or other property possessed, used or acquired in the said business shall be liable to seizure and sale under execution in satisfaction of such judgment and costs . . ."

a corporation with clearly defined percentages of ownership interest inuring to each partner or stockholder. Accordingly, the trial court was not clearly erroneous in finding that the garnishment was proper because Renee Wanex had no vested rights of ownership in the Provident State Bank account.

## III

Appellants argue that the Maryland Rules of Procedure require service of process upon the judgment debtor in a post-judgment garnishment proceeding. We disagree.

Maryland Rule F 1 provides:

RULE F 1 — Subsequent Procedure.

"Where an attachment on a judgment shall have been issued pursuant to this Subtitle, *it shall be served pursuant to Rule G 47* (Service of Writ-Garnishment) and the procedure shall conform to the provisions of Section d of Rule G 42 (Documents to Be Filed — Instructions to the Sheriff) and Rules G 51 (Motion to Quash), G 52 (Appearance of Garnishee), G 56 (Interrogatories to Garnishee-Notice-Failure to Answer), G 57 (Dissolution of Attachment), G 58 (Claimant of Property Attached), and G 60 (Sale of Attached Property)." (Emphasis added.)

Maryland Rule G 47 provides:

"Rule G 47. Service of Writ-Garnishment.

a. Service on Garnishee.

A Writ of attachment by way of garnishment may be served upon a person having property or credits belonging to the defendant.

---

It is clear from the court's oral opinion that the failure to file a certificate of agency in the Dorchester County records was a significant factor in determining that Renee Wanex had no ownership interest in the business checking account.

### b. Notice to Garnishee.

A Writ of attachment by way of garnishment shall comply substantially with section e (f) of Rule 103 (Process-Issuance-Return) and shall notify each person upon whom it is served to appear before the court within the time set forth in Rule 307 (Time for Defendant's Initial Pleading) and show cause why the property or credits so attached should not be condemned."

Neither Rule F 1 nor Rule G 47 expressly require service of a writ of garnishment on the judgment debtor. Appellants suggest, however, that service upon the judgment debtor is constitutionally mandated and arises by direct implication under Rule G 51.

The constitutionality of post-judgment attachment procedures without notice to the judgment debtor was addressed in *Endicott Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285 (1924).[7] In that case, the Supreme Court held that a New York law which permitted a judgment creditor to garnish a debtor's wages without affording him prior notice or an opportunity to be heard did not violate the Due Process Clause of the Fourteenth Amendment. Justice Sanford, writing for the Court, stated,

"[T]he established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his

---

**7.** The Supreme Court in Knight v. DeMarcus, 102 Ariz. 105, 425 P.2d 837, *cert. granted sub nom. Hanner v. DeMarcus,* 389 U.S. 926 (1967), granted *certiorari* apparently to reconsider *Endicott.* The writ, however, was subsequently dismissed as improvidently granted. 390 U.S. 736 (1967).

> tangible property; after the rendition of the judgment he must take 'notice of what will follow,' no further notice being 'necessary to advance justice.' "

*Id.* at 288. Several courts have adopted the persuasive reasoning of *Endicott* to uphold state laws which do not require prior notice to judgment debtors in a post-judgment attachment proceeding. *E.g., Halpern v. Austin,* 385 F.Supp. 1009 (N.D.Ga. 1974); *Katz v. Ke Nam Kim,* 379 F.Supp. 65 (Haw. 1974); *Moya v. DeBaca,* 286 F.Supp. 606 (N.M. 1968), *appeal dismissed,* 395 U.S. 829 (1968).

In *Halpern v. Austin,* 385 F.Supp. 1009 (N.D.Ga. 1974), a statute permitting a husband's wages to be garnished to satisfy alimony obligations without prior notice was upheld. The federal district court distinguished post-judgment garnishment situations from cases such as *Sniadach v. Family Finance Corp.,* 395 U.S. 337 (1969) and its progeny which have imposed a notice and hearing requirement for pre-judgment attachments. *See Fuentes v. Shevin,* 407 U.S. 67 (1972), and *Mitchell v. W.T. Grant Co.,* 416 U.S. 600 (1974). The hardships, risks, as well as the leverage held by creditors attendant in a pre-judgment garnishment proceeding are, for all practical purposes, eliminated in the post-judgment proceeding. As stated in *Halpern, supra* at 1012-13,

> "Applying these principles to the instant case, the court finds that the 1967 divorce decree and alimony judgment as a basis for the garnishment established 'the validity, or at least the probable validity, of the underlying claim against' plaintiff before he was deprived of his property. *Id.* (emphasis added). Although the judgment can be modified, defenses to its payment may arise, or other contingencies may occur, there is still the prior judicial determination of the existence of the alleged debt where plaintiff obtained a hearing. This would appear to satisfy Endicott-Johnson Corp. v. Encyclopedia Press, Inc., 266 U.S. 285, 45 S. Ct. 61, 69

L.Ed. 288 (1924), often cited for the proposition that due process does not require that notice and opportunity for a hearing be afforded a judgment debtor before garnishment.

\* \* \* \*

Accordingly, absent special circumstances, *Sniadach* and its progeny should be limited to pre-judgment summary procedures and not be expanded into the post-judgment realm."

Finally, we cannot agree with appellants' reading of Rule G 51 which would require service of process upon a judgment debtor.[8]

That rule provides as follows:

"*A defendant* or garnishee *may file a motion* within the time required by Rule 307 (Time of Defendant's Initial Pleading) praying that the writ be quashed and set aside, and thereupon the court may order the sheriff to produce the writ and the proceedings thereunder in court." (Emphasis added.)

Appellants did, in fact, file a motion to quash the attachment and this motion was heard and decided by the trial court. But they assert that by allowing a "defendant" (the Judgment debtor in a post-judgment garnish proceeding) to file an opposing motion the Rules contemplate service upon the judgment debtor. They further suggest that in providing a defendant an "opportunity to be heard" by way of motion, the Rules also comprehend giving him "notice" by service of process. In addressing this contention, we are mindful of the words of Justice Harlan in his concurring opinion in *Sniadach, supra,*

"I think that due process is afforded only by the the kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable

---

8. Rule G 51 is also included by reference in Rule F 1.

validity, of the underlying claim against the alleged debtor before he can be deprived of his property or its unrestricted use. I think this is the thrust of the past cases of this Court." 395 U.S. at 343.

As indicated in our earlier discussion of *Endicott,* the relative validity of an underlying claim is essentially established by the judgment. Therefore, the procedural safeguards afforded a defendant in a post-judgment situation are considerably less than in the case of a pre-judgment attachment. Due process would seem to require some opportunity for a defendant to be heard in a post-judgment summary procedure to oppose an attachment. However, the right to file an opposing motion is not preconditioned upon the defendant being served with process prior to the actual garnishment. In simply providing a post-judgment defendant an opportunity to file a motion to quash a writ, Rules F 1 and G 51 properly envision only a minimal procedural safeguard.

Adequate notice of the garnishment is afforded, as in this case, when the defendant attempts to retrieve his assets and discovers they have been frozen. In addition, a defendant with an outstanding judgment against him is already on "notice of what will follow," *i.e.,* that the prevailing party in the original action will seek to satisfy his judgment.[9] *Endicott, supra* at 288. Thus, notice in a post-judgment garnishment proceeding does not require service of process on the judgment debtor.

> *Judgment affirmed; costs to be paid*
> *by appellants.*

---

**9.** We also acknowledge that, as a practical matter, if judgment debtors were given notice prior to the actual garnishment, they may attempt to move their assets and, therefore, frustrate the purpose of post-judgment summary procedures.