REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 935

September Term, 2014

MORGAN STANLEY & CO., INC.

v.

JOHN D. ANDREWS, JR.

Meredith,
Berger,
Leahy,

JJ.

Opinion by Berger, J.

Filed: October 1, 2015

In this appeal, we address the extent to which a creditor of one joint account holder may garnish funds in a joint account when another joint account holder is a non-debtor. We shall hold that there is a rebuttable presumption that joint account holders own the funds in an account, but that the presumption of joint ownership can be rebutted by clear and convincing evidence to the contrary.

In the present case, Morgan Stanley & Co., Inc. ("Morgan Stanley"), appellant, obtained a judgment against John Andrews, appellee ("Son"). Morgan Stanley moved to garnish the funds held in a joint bank account owned by both Son and his father, Don D. Andrews ("Father"). Father subsequently moved to assert his claim to the garnished funds, arguing that all of the funds in the joint account were Father's sole property. The circuit court ruled in favor of Father, finding that Father successfully rebutted the presumption and established, by clear and convincing evidence, that he was the equitable owner of the funds within the account. We shall affirm.

## FACTS AND PROCEEDINGS

On September 1, 2011, Morgan Stanley obtained a judgment in the Circuit Court for Montgomery County for $196,477.16 against Son.[1] On December 5, 2011, Morgan Stanley requested that the circuit court issue a writ of garnishment for Son's bank accounts with PNC Bank, National Association ("PNC"). The court issued a writ of garnishment on December 12, 2011. On December 27, 2011, PNC filed an answer to the writ of

---

[1] The basis for the judgment is unclear from the record and irrelevant to our determination of the issue on appeal.

garnishment for an account jointly titled in both Father and Son's names ("the joint account"). On December 29, 2011, Morgan Stanley filed a request for judgment against PNC.

On January 17, 2012, Father filed a motion pursuant to Maryland Rules 2-645(i)[2] and 2-643(e),[3] asserting his claim to the garnished property and requesting a hearing. Father filed an amended motion on January 30, 2012. On February 14, 2012, the circuit court denied Father's motion and amended motion without a hearing. On February 22, 2012, Father filed a motion to vacate the court's February 14, 2012 order, arguing that he had been

---

[2] Maryland Rule 2-645(i) provides:

> Before entry of judgment, the judgment debtor may seek release of the garnished property in accordance with Rule 2-643, except that a motion under Rule 2-643(d) shall be filed within 30 days after service of the writ of garnishment on the garnishee. Before entry of judgment, a third person claimant of the garnished property may proceed in accordance with Rule 2-643(e).

[3] Maryland Rule 2-643(e) provides:

> A person other than the judgment debtor who claims an interest in property under levy may file a motion requesting that the property be released. The motion shall be served on the judgment creditor and, if reasonably feasible, on the judgment debtor. If the judgment debtor is not served and does not voluntarily appear, the claimant shall file an affidavit showing that reasonable efforts have been made to ascertain the whereabouts of the judgment debtor and to provide the judgment debtor with notice of the motion. The court may require further attempts to notify the judgment debtor. The judgment creditor or the judgment debtor may file a response to the motion.

improperly denied a hearing. Father filed an amended motion to vacate on February 24, 2012, arguing that the trial court erred by failing to conduct a required hearing. Father further argued that the trial court erred in denying Father's motion asserting claim to garnished property. Both motions were denied on March 21, 2012.

Father noted a timely appeal to this court, and, in an unreported opinion, we reversed the judgment of the circuit court. *Don D. Andrews, Jr. v. Morgan Stanley & Co., Inc.*, No. 85, September Term 2012 (filed May 16, 2013). We held that the trial court erred by denying Father's claim without a hearing and remanded the case for further proceedings. We expressly took "no position on the merits of [Father's] claim of sole ownership." *Id.*, slip op. at 7.

Following the remand, the circuit court held an evidentiary hearing on June 13, 2014. Father presented three witnesses: PNC branch manager Lori McConnaughey ("McConnaughey"), Son, and Father. The parties stipulated to the admission of the PNC records for the joint account. Notably, the parties further stipulated that Father was the original source of all of the funds in the joint account.

McConnaughey testified that she assisted Father with establishing the joint account. She explained that Father "wanted to make sure that [Son] could write checks if something happened."[4] Son testified that he wrote checks from the joint account to "help my father

---

[4] An account can be established with a single owner and a separate person listed as a "convenience person." A "convenience person" is permitted to draw upon funds in an
(continued...)

out." Son testified that he did not pay any of his personal expenses from the joint account and that all of the checks he signed were to pay for Father's expenses. Son further testified that he did not deposit any of his own funds into the joint account, and that none of the funds in the joint account belonged to him. Son identified each transaction on the PNC records for the joint account and explained how each transaction was for the benefit of Father.

Father's testimony was consistent with that of Son. Father explained that he established the joint account because he wanted Son to be able to "handle the remodeling" of Father's vacation home. Father further explained that his health was an additional motivation behind the establishment of the account, commenting that he "was coming off having pneumonia in both lungs" which "can be a killer" for "people [Father's] age." When asked about the source of the funds within the joint account, Father testified that he "worked for the county government for 25 years" and had saved "about a half million dollars." Father explained that all of the funds held in the joint account "[a]bsolutely" came from accounts titled in Father's name.

Father testified that various individuals performing renovation work at the vacation home were paid from the joint account, explaining the arrangement between Father and Son as follows:

---

[4] (...continued)
account but has no ownership interest. Md. Code (1980, 2014 Repl. Vol.), §1-204(i) of the Financial Institutions Article.

4

> [E]very time [Son] wanted the check or something, [Son] would call me, or I would send some down with his mother, maybe two or three checks. And I was very careful not to give him a lot of checks on hand. Not that I didn't trust him, but I just wanted to make sure that everything was, you know, perfect, I mean.

Father did not give Son the checkbook "[b]ecause [Father] wanted to have control over it." Father explained that he had no concerns about what might happen if Son had control over the account, commenting that Son was "[v]ery trustworthy." Father testified that Son only wrote checks for Father's benefit.

Counsel for Father argued that the evidence established that the money in the joint account belonged to Father. Morgan Stanley argued that all of the funds in the joint account were subject to garnishment because both Father's and Son's names appeared on the account. Morgan Stanley explained that its "position under Maryland [l]aw is that once the account is created in a certain way, and the funds hit that account, the -- where the source of the funds came from doesn't matter, because they have chosen to put funds into a jointly owned account that either of them can use." Morgan Stanley further argued that Son obtained a benefit from the funds because he was permitted to use Father's vacation home.

The circuit court ruled in favor of Father, concluding that Father had established by clear and convincing evidence that all of the funds in the joint account belonged solely to him. The court found "that the sole source of funds for the PNC Bank account at issue in this case [was] the sole property of [Father]" and that "at no time did [Father] deposit any

5

funds belonging to Son in the account."  The circuit court further explained its ruling as

follows:

> I find that, except for some incidental withdrawals, which I find
> to be immaterial in the scope of the account, each and every
> expenditure from the account was for the benefit, legally, I find,
> of [Father], and not [Son].
>
> * * *
>
> The counsel for [Father] is correct that the Court of
> Special Appeals is quite clear that under Maryland law, if a
> bank account has been garnished, or attached, there is an
> opportunity for a party who claims to be the owner to come in
> and make an evidentiary showing satisfactory to the trial court
> that the money is, in fact, theirs, and it's not that of the
> judgment debtor.  I find that -- it's not clear to me necessarily
> who has the burden of proof, but even if I assigned it to
> [Father], I find -- and they don't say whether it's preponderance
> [or] clear and convincing.  Folks, even if the standard were
> clear and convincing evidence, I find that [Father] has jumped
> that hurdle. *There's no doubt in my head that all this money is
> [Father's].  All the expenditures were for the benefit of the
> father.*  So whatever further articulation the appellate courts
> want to do about the procedures, the steps, the burdens, the
> shifting, that's fine.  But frankly, unless they make it beyond a
> reasonable doubt, in my mind, *I have no doubt that all this
> money, at all times, belonged to [Father]*, and therefore, my
> earlier orders denying his request are erroneous and are vacated,
> and if counsel will draft an order consistent with this ruling,
> directing the judgment creditor to pay over the amount in
> question, I will sign it.

(Emphasis added.)  The circuit court's oral ruling was memorialized in a written order dated

June 17, 2014.  This timely appeal followed.

6

**STANDARD OF REVIEW**

We recently reiterated the standard applied by this Court when reviewing a case tried

before a court, explaining as follows:

> Our review of a judgment in a case that was tried to the court is governed by Rule 8–131(c). We "review the case on both the law and the evidence" and "will not set aside the judgment of the trial court on the evidence unless clearly erroneous" with "due regard to the opportunity of the trial court to judge the credibility of the witnesses." Md. Rule 8–131(c). "The deference shown to the trial court's factual findings under the clearly erroneous standard does not, of course, apply to legal conclusions." *Griffin v. Bierman*, 403 Md. 186, 195, 941 A.2d 475 (2008) (quoting *Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 72, 854 A.2d 879 (2004)). "We review *de novo* the circuit court's application of the law to the undisputed facts before it." *PNC Bank, Nat'l Ass'n v. Braddock Props.*, 215 Md. App. 315, 322, 81 A.3d 501 (2013).

*Montgomery Cnty. v. Fraternal Order of Police*, 222 Md. App. 278, 294 (2015).

**DISCUSSION**

Morgan Stanley avers that funds held in the joint account were *per se* subject to

garnishment because they were held in a joint account upon which Son was a named owner

and authorized signatory. As such, Morgan Stanley asserts that the circuit court's forensic

accounting was inappropriate. In the alternative, Morgan Stanley argues that, even if a

forensic accounting were appropriate, the facts do not support the circuit court's conclusion

that all of the funds in the joint account belonged to Father. We are unpersuaded.

Morgan Stanley's position is straightforward. Morgan Stanley asserts that funds held

within a joint account, upon which a judgment debtor is a named owner and signatory, are

7

subject to garnishment by a judgment creditor regardless of whether any co-owners of the account are judgment debtors.[5] Morgan Stanley posits that the judgment creditor has the authority to garnish the funds because any joint account holder has the authority, pursuant to the banking agreement, to deposit and deplete funds in the account. As we shall explain, Morgan Stanley's position inaccurately oversimplifies the law of garnishment.

## I.       Legal Framework

Maryland courts have not previously addressed the exact situation presented in this case, wherein two individuals are owners of a joint bank account, one of whom is a judgment creditor and the other is not. We did, however, address a somewhat similar issue in *Wanex v. Provident State Bank of Preston*, 53 Md. App. 409, 413 (1983). In *Wanex*, a daughter was an employee of her father's business and had signature authority on the father's business account. 53 Md. App. at 411. A creditor sought a writ of garnishment against the father, and the father moved to quash the garnishment on the business account arguing that it interfered with the daughter's rights in the account. *Id.* at 412. The trial court found that the daughter did not have an ownership interest in the account and denied father's motion. *Id.* We affirmed, holding that "[t]here was sufficient evidence before the [trial]

_____

[5] Before the trial court, Morgan Stanley articulated its position as follows:

> [O]nce the account is created in a certain way, and the funds hit that account, the -- where the source of the funds came from doesn't matter, because they have chosen to put funds into a jointly owned account that either of them can use.

8

court to conclude that it was an individual business account owned by [the father] and maintained incident to the operation of his sole proprietorship[.]" *Id.* at 413. We emphasized that the daughter had not deposited any personal funds in the account. *Id.* at 414.

To be sure, this case differs from *Wanex* in that the joint account at issue here is not a business account and Son was listed as an owner of the joint account rather than a signatory. Before returning to the specific facts of this case, however, we consider the legal framework that applies when evaluating a claim raised by a non-debtor joint account holder in response to an attempt of garnishment by a creditor of a debtor joint account holder.

We have explained:

> Funds of defendant on deposit in a bank are subject to garnishment in the absence of special circumstances creating an exemption. However, the garnishing creditor can reach funds of the depositor only in cases where the depositor is the true owner thereof. For the purposes of garnishment a bank deposit *prima facie* belongs to the person in whose name it stands, the general test being whether, but for the garnishment, the deposit would be subject to defendant's check, or whether defendant could sue the bank therefor in debt or assumpsit.

*Wanex*, 53 Md. App. at 413 (quoting 38 C.J.S. Garnishment § 80 (1943)). Indeed, we have commented that a bank deposit *prima facie* belongs to the person whose name is on the account and who can withdraw funds from the account. We have not, however, held that a bank deposit *per se* belongs to a person whose name is on the account. Rather, we have emphasized that factors relating to the name on the account and who can write checks on the

9

account "are not conclusive, and the fact that the depositor can withdraw or maintain an action for the deposit does not in all cases render the deposit subject to garnishment at the instance of a creditor of the depositor." *Id.* at 413-14. The Court of Appeals has commented that the form of a joint account "on its face creates a joint tenancy." *Haller v. White*, 228 Md. 505, 510 (1962). The Court explained, however, that the form of the joint account "raises only a rebuttable presumption, but the burden is upon the party seeking to rebut it."[6] *Id.*

The question then becomes, if funds within a joint account *prima facie* belong to a named owner of the account, under what circumstances, if any, can the presumption of ownership be rebutted when a creditor of one joint account holder seeks to garnish the account? As aptly noted in the American Law Reports annotation addressing this precise issue, "[w]here joint bank accounts are concerned, and the creditor of one account holder has filed a garnishment against the joint account, it is helpful to think of the joint bank account as a separate entity from the money it contains." Martha A. Churchill, Annotation, *Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor*, 86 A.L.R.5th 527 (2001) at § 2[a]. Churchill explains:

---

[6] In *Haller*, *supra*, an aunt and her two nieces were co-owners of a joint bank account. Following the aunt's death, one of the nieces withdrew funds from the account. On appeal, both parties agreed that the funds within the account were to be used for the aunt during her lifetime, but "[t]here was a sharp conflict in the testimony as to what was her intention in regard to the disposition of the balance remaining in the account at her death." 228 Md. at 510. Given the significant conflict in the testimony, the Court of Appeals held that the presumption of joint tenancy had not been rebutted.

> The account holders all own the account, but they do not necessarily own the money in it. The joint account holders all hold legal title to the account. Usually, they have all signed the bank signature card and agreed to the usual contract terms with the bank. It may be, however, that only one account holder owns the money on deposit. Almost universally, courts are interested in determining which depositors hold equitable title to the money that is in the account, so that the creditor of one depositor does not wrongfully take property belonging to another depositor. This is sometimes referred to by the courts as the "reality" of ownership, as contrasted with bare legal title.

*Id.* (Footnote and cross-reference omitted). The overwhelming majority of jurisdictions to address this issue have differentiated between legal title to the account and equitable title to the funds within the account. *Id.* "The purpose of making such a distinction is to prevent a creditor from garnishing based merely on legal title." *Id.*

Courts in at least twenty-three states have held or recognized as a general principle that a judgment creditor of one joint account holder may execute against a joint account only to the extent of the debtor's equitable interest in the joint account. *Id.* at § 3 (collecting cases).[7]  Indeed, only one jurisdiction takes the view that a judgment creditor has

---

[7] The twenty-three states are: Alabama, *see Amarlite Architectural Products, Inc. v. Copeland Glass Co.*, 601 So. 2d 414 (Ala. 1992); Arkansas*, see First Fed. Sav. & Loan Ass'n of Pine Bluff v. Pine Bluff Nat. Bank*, 501 S.W.2d 226 (Ark. 1973); California, *see Tinsley v. Bauer*, 271 P.2d 116 (Cal. Dist. Ct. App. 1954); Florida, *see Thomas J. Konrad & Associates, Inc. v. McCoy*, 705 So. 2d 948 (Fla. Dist. Ct. App. 1998); Georgia, *see Lamb v. Thalimer Enterprises, Inc.*, 386 S.E.2d 912 (Ga. Ct. App. 1989); Illinois, *see Fisher v. Jacobs*, 188 N.E.2d 505 (Ill. App. Ct. 1963); Indiana, *see Browning & Herdrich Oil Co. v. Hall*, 489 N.E.2d 988 (Ind. Ct. App. 1986); Iowa, *see Anderson v. Iowa Dep't of Human Servs.*, 368 N.W.2d 104 (Iowa 1985); Kansas, *see Walnut Valley State Bank v. Stovall*, 574 P.2d 1382 (1978); Massachusetts, *see Colella v. North Easton Sav, Bank*, 4

(continued...)

11

unrestricted access to a debtor's joint account, regardless of equitable ownership.[8] When

[7] (...continued)
Mass. L. Rptr. 518 (Mass. Super. Sept. 11, 1995); Michigan, *see Danielson v. Lazoski*, 531 N.W.2d 799 (Mich. 1995); Mississippi, *see Deposit Guar. Nat. Bank v. Pete*, 583 So. 2d 180 (Miss. 1991); Missouri, *see Greenwood v. Bank of Illmo*, 782 S.W.2d 783 (Mo. Ct. App. 1989); Nebraska, *see Craig v. Hastings State Bank*, 380 N.W.2d 618 (Neb. 1986); New Jersey, *see Esposito v. Palovick*, 101 A.2d 568 (N.J. Super. Ct. App. Div. 1953); New York, *see Moskowitz v. Marrow*, 167 N.E. 506 (1929); North Carolina, *see Jimenez v. Brown*, 509 S.E.2d 241 (N.C. Ct. App. 1998); Ohio, *see Gillota v. Gillota*, 448 N.E.2d 802 (Ohio 1983); Oregon, *see Greenwood v. Beeson*, 454 P.2d 633 (Or. 1969); Texas, see *RepublicBank Dallas v. Nat'l Bank of Daingerfield*, 705 S.W.2d 310 (Tex. App. 1986); Utah, *see Peterson v. Peterson*, 571 P.2d 1360 (Utah 1977); Washington, *see Madison v. Gen. Acceptance Corp.*, 612 P.2d 826 (Wash. Ct. App. 1980); and Wyoming*, see Hancock v. Stockmens Bank & Trust Co.*, 739 P.2d 760 (Wyo. 1987).

[8] In *Fleet Bank Connecticut, N.A. v. Carillo*, 691 A.2d 1068 (Conn. 1997), the Supreme Court of Connecticut held that each co-holder of a joint account is considered an owner of the entire account and a creditor of one co-holder may garnish all of the money within the account. This holding was based upon Connecticut's bank protection statute, which provided that either party was permitted to withdraw funds from the account. Connecticut's position on this issue has been referred to as "a drastic departure from the majority view." 86 A.L.R.5th 527 (2001) at § 2[a].

This Court has previously cited *Fleet* favorably, albeit in a different context. In *O'Brien v. Bank of Am., N.A.*, 214 Md. App. 51, 88 (2012), we commented that we "agree[d] with the Connecticut Supreme Court's reasoning in *Fleet Bank*, 691 A.2d at 1073, indicating that courts must tread lightly when applying the laws of property to the rules of joint accounts." We made this comment in the context of a bank's challenge to the constitutionality of Md. Code (1974, 2013 Repl. Vol.), § 11-603 of the Courts and Judicial Proceedings Article. We held that the challenged statute, which protects spousal property from garnishment unless both spouses are judgment debtors, did not violate the state constitution. *O'Brien*, *supra*, 214 Md. App. at 88-89. We decline to follow *Fleet* -- an outlier with respect to garnishability of jointly-titled accounts -- in the context of the present case.

One other state has expressed reservations about permitting a fact-finder to determine equitable ownership of funds held within a joint account. In addressing this issue, the Minnesota Supreme Court initially took the position that it would be too difficult "in most

(continued...)

12

determining equitable ownership of funds within an account, courts generally apply a presumption of ownership,[9] which can be rebutted only by clear and convincing evidence. *Id.* Various factors are considered by courts when determining ownership of the funds within a joint account, but the two primary factors considered are: (1) the exercise of control over the funds in the account, and (2) contribution, or the source of funds within the account. *Id.* Courts also consider various circumstances relevant to each case, such as whether a party's social security number appeared on an account, which party's name appeared on checks, which party paid taxes on interest from the account, which party kept possession of the passbook or other documents pertaining to the account, and which party signed checks from the account. *Id.*

---

[8] (...continued)
cases" to determine how much money in a joint account was owned by a debtor and held that the full amount of the account was subject to garnishment by one co-holder's creditor. *Park Enterprises v. Trach*, 47 N.W.2d 194 (Minn. 1951). *Park Enterprises* does not, however, discuss how a court should make a determination when evidence exists which would establish equitable ownership of funds within an account. *See* 86 A.L.R.5th 527 (2001) at § 2[a]. Furthermore, while *Park Enterprises* has not been overruled, it has been superseded

by statute in Minnesota. *See Savig v. First Nat. Bank of Omaha*, 781 N.W.2d 335, 340 (Minn. 2010).

[9] Some jurisdictions use an "equal share" approach, imposing a rebuttable presumption that all account holders own equal shares of the funds held in a joint account, while other jurisdictions utilize a "full share" approach, presuming that each co-owner beneficially owns the entire account, absent proof to the contrary. *See* 86 A.L.R.5th 527 (2001) at § 2[a]. Because, as we shall explain, Father rebutted the presumption of ownership by establishing that Father was the sole equitable owner of all funds within the joint account, we need not determine precisely which type of presumption of ownership is appropriate under Maryland law.

13

In our view, the approach adopted by the overwhelming majority of jurisdictions which have addressed this issue is consistent with Maryland law. As discussed, supra, we commented in *Wanex*, *supra*, that a bank deposit *prima facie* belongs to a person named on the account. 53 Md. App. at 413. We quoted from Corpus Juris Secundum for the proposition that an individual's name on the account and ability to write checks on the account is "not conclusive." *Id.* (quoting 38 C.J.S. Garnishment § 80 (1943)). Accordingly, a joint owner of an account can rebut the presumption of ownership in at least some circumstances. Left open by *Wanex*, however, is the question of precisely how one can overcome the presumption of ownership. In this opinion, we resolve the question left open by *Wanex*, adopt the majority approach, and hold that a co-owner of a joint account can rebut the presumption of ownership by proving, by clear and convincing evidence, which portion of the account belongs to each co-owner.[10]

---

[10] Our holding in this case does not in any way alter the restriction upon garnishment of property owned jointly by spouses. Pursuant to Md. Code (2006, 2013 Repl. Vol.), § 11-603(a) of the Courts and Judicial Proceedings Article ("CJP"), with a limited exception relating to joint accounts created after the entry of a judgment, "a garnishment against property held jointly by [spouses], in a bank, trust company, credit union, savings bank, or savings and loan association or any of their affiliates or subsidiaries is not valid unless both owners of the property are judgment debtors." This restriction also has roots in the common law. *See Andree v. Equitable Trust Co.*, 46 Md. App. 688, 689 (1980) ("In sum *Fairfax* forbids the creditor of one spouse, from attaching a bank account held jointly by the debtor and the spouse, in trust for one another, subject to the order of either, and payable upon death to the survivor.") (citing *Fairfax v. Savings Bank of Baltimore*, 175 Md. 136 (1938)).

The CJP § 11-603 restriction upon garnishment of joint accounts applies *only* to property owned by spouses. This opinion, on the other hand, addresses *all other* jointly
(continued...)

14

This approach is consistent with Maryland case law. In *Wagner v. State*, a criminal case affirming the appellant's theft conviction for stealing funds from an account on which the appellant was named as a co-owner, we recently held that "titling an account [with two parties listed] as 'joint owners' presumptively creates an ownership interest in both parties, but that presumption can be rebutted by evidence of a contrary intent of the original owner of the account." 220 Md. App. 174, 190 (2014).[11] We explained that the following standard applies:

> In approaching ownership of a bank account prior to the death of one of the parties, the current state of the law requires us to look at the intent of the [co-owner] and determine if he intended to make an irrevocable gift of ownership of the account. . . . [T]itling an account as "joint owners" presumptively creates an ownership interest in both parties, but that presumption can be rebutted by evidence of a contrary intent of the original owner of the account.

*Id*. In *Wagner*, we looked to various cases which involved issues relating to ownership rights in the context of joint bank accounts. *Id.* at 187-90. We revisit several of the same

---

[10] (...continued)
owned accounts. Simply put, pursuant to CJP § 11-603(a), a joint account owned by spouses is not garnishable unless both owners are judgment debtors. Pursuant to our holding in this opinion, a joint account owned by multiple individuals *other than spouses* is subject to garnishment by a judgment debtor of one owner, unless the presumption of joint ownership is rebutted by clear and convincing evidence.

[11] The appellant filed a petition for certiorari, which was granted. *See Wagner v. State*, 441 Md. 666 (2015). The case is presently pending before the Court of Appeals. *Wagner v. State*, No. 11, 2015 Term.

15

cases here, all of which provide support for our holding that the presumption of ownership of a joint account can be rebutted by clear and convincing evidence.

In *Barker v. Aiello*, 84 Md. App. 629 (1990), we addressed the question of whether a decedent's joint bank accounts were assets of a co-owner of the account or were assets of the decedent's estate. Although this case has been superseded by statute,[12] the discussion of ownership of joint accounts under common law is relevant to the present case. In *Barker*, we assessed whether various joint bank accounts were "valid trust accounts which belong[ed] to [the co-owner of the account], or whether the accounts are joint bank accounts and unperfected gifts, and, thus, are assets of the estate." *Id.* at 634. We emphasized that "[j]oint bank accounts do not contain trust language, and the *depositor retains legal and equitable title to the monies*." *Id.* at 634 (citing *Whalen v. Milholland*, 89 Md. 199 (1899) (*Milholland I* )) (emphasis added). We further explained that, when determining whether the assets belonged to the estate or to the co-owner of the account, we must consider whether

---

[12] *Barker*, *supra*, was superseded by the enactment of the "multiple-party account" provision of the Financial Institutions Article. *See* Md. Code (1980, 2011 Repl. Vol.), § 1-204 of the Financial Institutions Article ("FI"). "FI § 1-204 was enacted in 1992 to resolve uncertainties in the common law concerning ownership of funds residing in a multiple-party account upon the death of the account holder." *Stanley v. Stanley*, 175 Md. App. 246, 247-48 (2007). When FI §1-204 was enacted, the rebuttable presumption of a perfected gift created by adding a co-owner to a joint account, which had been available at common law, was abrogated by statute in the context of the death of one of the parties, regardless of the entitlement of a party to make withdrawals. FI § 1-204 has no effect, however, on ownership of an account when both parties are still living.

the donor intended the funds to be a gift to the co-owner. *Id.* at 636 ("The intent of the donor is a factual issue, and is determined at the time the entry in the passbook was made.").

*Milholland I* supported our holding in *Barker*, *supra*, and supports our holding in the present case. In *Milholland I*, the Court of Appeals held that funds in a joint account were assets of an estate rather than assets of a co-owner of the account. 89 Md. at 202. A passbook entry read: "Elizabeth O'Neill and Mary Whalen. Joint owners. Payable to the order of either or the survivor." The Court of Appeals held that the words "joint owners" were "not sufficient in a deposit made in a Savings Bank, to transfer title to the fund -- that is, they are not sufficient to convert the fund from being the property of the person to whom it belongs into the property of the original owner and another individual." *Id.* The Court explained that the term "joint owners" "cannot operate to vest an ownership, to the extent of one-half of the fund, in some one else." *Id.* at 203. The Court further emphasized that "the original owner retain[ed] possession of the passbook," which weighed against finding joint ownership of the funds *Id.*[13] It is, therefore, appropriate for a trial court to consider

---

[13] In *Milholland v. Whalen*, 89 Md. 212 (1899) ("*Milholland II*"), the Court of Appeals addressed a separate joint account and held that the the donor intended to create a trust and that the funds passed to the co-owner. In *Milholland II*, the passbook entry read: "Metropolitan Savings Bank, in account with Miss Elizabeth O'Neill. In trust for herself and Mrs. Mary Whalen, widow, joint owners, subject to the order of either; the balance at the death of either belonging to the survivor." *Id.* at 213. The Court held that the funds passed to Whalen because O'Neill held the funds in trust for Whalen if she happened to outlive O'Neill. *Id.* at 218.

17

evidence beyond the mere titling of the account when evaluating whether the funds within a joint account are actually joint property.

The Court of Appeals applied *Milholland I* in *Jones v. Hamilton*, 211 Md. 371 (1956). The Court clarified the law relating to joint ownership of bank accounts, explaining:

> The distillation of the Maryland cases is that in a contest between those claiming as co-owners or as surviving owner of a bank or building association account, the Court has sought to find who was the original owner of the money on deposit, the intention of the owner as to the fund, the mechanics employed to effectuate that intent, and their effectiveness. If the mechanics are adequate to effectuate the intent, the Court will gratify the intent, whether or not the trust form has been used.

*Id.* at 380. Furthermore, in *Stanley*, *supra*, we reiterated that the right to withdraw funds from an account does not, in and of itself, establish a right of ownership. 175 Md. App. at 265 ("[A] right of withdrawal does not create an ownership interest in the funds withdrawn that overrides the ownership interest of the remaining survivors to the account, established by FI § 1-204(d).").

The majority rule for garnishment of funds held within joint accounts -- that is, that a co-owner of a joint account can rebut the presumption of joint ownership by proving, by clear and convincing evidence, which portion of the account belongs to each co-owner -- is consistent with established Maryland law discussed *supra*. As we have explained, Maryland courts have long held, in a variety of contexts, that the titling of a bank account and the right to withdraw from the account does not necessarily indicate ownership.

18

Prior to this case, however, we have not articulated the appropriate standard to be applied when evaluating whether a co-owner has successfully rebutted the presumption of joint ownership. In our view, a clear and convincing evidence standard -- the standard applied by the majority of jurisdictions -- is appropriate. *See* 86 A.L.R.5th 527 (2001) at § 2[a] ("Most states allow the presumption of ownership to be rebutted, but only by clear and convincing evidence, for fear that depositors might resort to fraud or collusion to avoid paying a debt."). Although unaware of the precise standard -- because it had not been articulated previously by Maryland appellate courts -- the circuit court cogently explained that it found that Father had proved, by clear and convincing evidence, sole ownership of the funds within the joint account.

We are unpersuaded by Morgan Stanley's assertions that our holding will result in disastrous consequences. Morgan Stanley avers that adopting the majority view would require courts to intervene by undoing complicated banking procedures that the account holders themselves have contractually opted to avoid. Morgan Stanley further maintains that the actual accounting itself may prove incredibly complex and impossible to determine the exact source of the funds and at what level the garnishment may proceed. Morgan Stanley's concerns, while not entirely unfounded, are overstated. By requiring a co-owner to prove ownership by clear and convincing evidence, we limit the instances that a litigant

will be able to successfully persuade the court of separate ownership. Indeed, the presumption of joint ownership is most difficult to overcome.[14]

Having set forth the applicable legal framework, we now turn to the specific facts of the instant appeal.

## II.    Analysis

The next question before us is whether the circuit court's factual findings with respect to Father's ownership of the funds within the account were clearly erroneous. *See Montgomery Cnty.*, *supra*, 222 Md. App. at 294 ("We 'review the case on both the law and the evidence' and 'will not set aside the judgment of the trial court on the evidence unless clearly erroneous' with 'due regard to the opportunity of the trial court to judge the credibility of the witnesses.'") (quoting Md. Rule 8-131(c)).

The trial court considered copious evidence when it determined that Father had proved, by clear and convincing evidence, that he was the sole owner of all funds held in the joint account. That evidence included testimony from PNC branch manager

_____

[14] The trial judge commented on this issue, rejecting Morgan Stanley's assertion that a ruling in favor of Father would encourage creditors to seek a forensic accounting in all cases:

> They've got the burden to do it. And if they jump the hoops and so be it. Why should the courts, if it is in fact true that it's somebody else's money, just because they screwed up the titling, why should a judgment creditor of somebody other than the owner get to keep the money? . . . . I've got to tell you, this is the first time I've seen anybody drive down that road. It's probably not very easy to do.

McConnaughey, Father, and Son, as well as the actual bank records. Based upon the quality of the evidence presented as well as the credibility of the witnesses who testified, the circuit court reasonably concluded that the joint bank account was established for the purpose of having Son oversee the renovation of Father's beach home. The evidence supported the circuit court's factual findings, in that Son testified that he wrote checks from the joint account "to help [F]ather out." Son further testified that he did not pay any of his personal expenses from the account whatsoever. The circuit court considered Son's testimony, in which Son identified each check that appeared in the bank records and explained how each transaction was for the benefit of Father. The circuit court further considered that Son did not deposit any of his own funds into the joint account. Critically, the circuit court considered that the parties had stipulated that Father was the original source of all funds held in the joint account.

The circuit court found further support for its factual findings in Father's testimony. Father testified that he established the joint account in order for Son to "handle the remodeling" of the vacation home. Father further testified that all of the funds held in the joint account belonged to him, and that Son was not the source of any funds held in the joint account. Based upon the undisputed evidence presented, the court found that "that the sole source of funds for the PNC Bank account at issue in this case were the sole property of [Father]" and that "at no time did [Father] deposit any funds belonging to Son in the

account." These findings were supported by the evidence presented, and we shall not disturb them.

The circuit court rejected Morgan Stanley's assertion that Son obtained a benefit by being permitted to use Father's vacation home, explaining as follows:

> I understand the argument about [Son] got to use the beach house, and I heard his testimony that he stays there more than mom and dad does. I find that -- to be not germane, and frankly, that's -- wouldn't shock me if that's true in many, many, many cases. But here, the benefit, I find, to [Son], was incidental, and that the principal beneficiary was his father, and I find that the persons who own the house, legal and equitable title, are [Father] and his former spouse. They have both legal and equitable ownership. [Son] has, based on the evidence in front of me, zero ownership of the Delaware house. So his benefits are as incidental as the children of any other parents who get to use the parents' real property from time to time.

The court aptly observed that Father and his former spouse had legal and equitable ownership of the vacation home and that Son's benefits were "incidental." Accordingly, the circuit court found that Son had "zero ownership of the Delaware house." This finding was also supported by the evidence, and was not clearly erroneous.

In sum, the circuit court's factual findings were supported by the evidence presented. Based upon the evidence presented, the circuit court reasonably concluded that Father had proved, by clear and convincing evidence, that he was the sole owner of all funds held in the joint account. We, therefore, hold that the circuit court did not err in concluding that Father has overcome this significant hurdle and has effectively rebutted the presumption of joint ownership. Accordingly, we affirm.

22

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**